UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In Re: Margaret McGarrity,
Personal Representative of the Estate of Ann M. McGarrity
Plaintiff,

v.                                          Case No.8:23-cv-00776-WFJ-JSS

FLORIDA HEALTH SCIENCES CENTER, INC. D/B/A
TAMPA GENERAL HOSPITAL, ABIGAIL JACKSON, R.N.,
ASHLEY BOYT, R.N., NICOLA CRAIG, R.N.,
FLORIDA GULF-TO-BAY ANESTHESIOLOGY ASSOCIATES, LLC,
LACINDA MICHELLE DENIS, P.A,
BRIAN BOLT, A.R.N.P., PREMIER HOSPITALISTS, PL,
YASMIN KHALDOUN MAHMOUD, M.D.,
DOUGLAS SCHWARTZ, D.O. AND MICHAEL FRANKS, A.R.N.P,

     Defendants.
_____/

## <u>THIRD AMENDED COMPLAINT</u>

The Plaintiff, MARGARET A. MCGARRITY, as Personal Representative of the Estate

of Ann M. McGarrity, deceased, hereby sues the DEFENDANTS FLORIDA HEALTH

SCIENCES CENTER INC, D/B/A TAMPA GENERAL HOSPITAL ("HOSPITAL"), ABIGAIL

JACKSON, R.N.("JACKSON)"), ASHLEY BOYT, R.N. ("BOYT"), NICOLA CRAIG, R.N.

("CRAIG"), FLORIDA GULF-TO-BAY ANESTHESIOLOGY ASSOCIATES, LLC ("FGTB"),

LACINDA MICHELLE DENIS, P.A. ("DENIS"); BRIAN BOLT, A.R.N.P. ("BOLT"),

PREMIER HOSPITALISTS ("PREMIER"), YASMIN KHALDOUN MAHMOUD, M.D.

("MAHMOUD"), DOUGLAS SCHWARTZ, D.O. ("SCHWARTZ"), AND MICHAEL

FRANKS, A.R.N.P ("FRANKS"), and any and all health care providers who treated Ann M.

McGarrity and subsequently any and all other potential Defendants unknown as of now to the Plaintiff, and alleges:

1. This is an action for damages that exceeds Fifty Thousand Dollars ($50,000.00).

2. All applicable and legal prerequisites, notices, and/or conditions precedent to the filing of these causes of action against the named Defendants, including Rule 1.650, Florida Rules of Civil Procedure, and §766.106, Florida Statutes, have been met and/or fulfilled by the Plaintiff.

3. Venue is proper in Hillsborough County, Florida as the actions which give rise to this lawsuit occurred in Hillsborough County, Florida and the Defendants in this matter either perform work in Hillsborough County, Florida or maintain agents in Hillsborough County, Florida.

4. The Plaintiff, MARGARET MCGARRITY, has been appointed Personal Representative of the Estate of Ann M. McGarrity, by the Circuit Court in and for Hillsborough County, Florida, as shown by the attached certified copy of the Letters of Administration. See Attachment 1.

5. Plaintiff's decedent was at all times material to this cause of action, a resident of Hillsborough County, Florida.

6. The Defendant FLORIDA HEALTH SCIENCES CENTER, INC. D/B/A TAMPA GENERAL HOSPITAL ("HOSITAL") was at all times material to this cause of action a Florida Not for Profit Corporation, with principal address at One Tampa General Circle, Tampa, FL 33606.

7. Defendant, HOSPITAL, failed to fully comply with presuit by refusing to allow its employees to give presuit unsworn statements in contravention to Florida law.

8.  The HOSPITAL at all times material to this action employed registered nurses JACKSON, BOYT, CRAIG and other employees, agents, apparent agents, registered aids, technicians, servants, independent contractors and other staff members. who had responsibility for the care of Ann M. McGarrity.

9.  FGTB is a Florida Foreign Limited Liability Company doing business in Hillsborough County, Florida.

10. At all material times, FGTB employed physician assistants, physicians and advanced registered nurse practitioners who performed medical services for Ann McGarrity at HOSPITAL.

11. At all material times, FGTB performed medical care at HOSPITAL as an agent/apparent agent/employee or independent contractor.

12. At all times material to this action, FGTB by and through its employees/agents/apparent agents and/or independent contractors and/or contractors performed medical care services to Ann McGarrity at HOSPITAL.

13. FGTB, at all times material to this action, employed DENIS, BOLT and FRANKS as employees/agents/apparent agents and/or independent contractors and/or independent contractors.

14. At all material times, Defendant, BOLT was an Advanced Registered Nurse Practitioner ("ARNP") performing medical services in Hillsborough County, Florida.

15. At all material times, Defendant BOLT was an employee, contractor and/or servant of Defendant, FGTB.

16. At all material times, Defendant, DENIS, was a physician assistant performing medical services in Hillsborough County, Florida.

17. At all material times, Defendant DENIS was an employee, contractor and/or servant of Defendant, FGTB.

18. At all material times, Defendant, FRANKS, ARNP was an advanced registered nurse practitioner performing medical services in Hillsborough County, Florida.

19. At all material times, Defendant FRANKS was an employee, contractor and/or servant of Defendant, FGTB.

20. PREMIER was at all material times a Florida Limited Liability Company with its principal address in Lutz, Florida.

21. PREMIER provided medical services to Plaintiff at Ann McGarrity at HOSPITAL through its employees/agents/apparent agents/servants and/or independent contractors at all times materials to the Complaint.

22. PREMIER, by and through its employees, agents, contractors, and servants performed work at HOSPITAL at all material times.

23. PREMIER, by and through its employees, agents, contractors, and servants performed health care services to Ann McGarrity while she was in HOSPITAL at all material times.

24. At all material times, Defendant, SCHWARTZ, was an employee, independent contractor and/or servant of PREMIER.

25. At all material times, Defendant, SCHWARTZ, was a physician performing medical services in Hillsborough County, Florida.

26. At all times material, SCHWARTZ was a medical physician licensed in the State of Florida and was Decedent's physician with a duty to her as his patient.

27. At all times material, MAHMOUD, was a medical physician licensed in the State of Florida and was Decedent's physician with a duty to her as her patient.

28. At all times material, Defendant, MAHMOUD, was an employee, independent contractor, or servant of Defendant, PREMIER.

29. At all times material to the Complaint, MAHMOUD, was a physician performing medical services in Hillsborough County, Florida.

30. At all material times, MAHMOUD performed medical services at HOSPITAL on Ann McGarrity.

31. PREMIER at all times material employed SCHWARTZ and MAHMOUD as employees/servants/agents/apparent agents and/or independent contractors and who provided medical care to Decedent, Ann McGarrity.

32. PREMIER and HOSPITAL had a business relationship with SCHWARTZ and MAHMOUD and received the notices of intent on behalf of the physicians, signing the green return receipt card. At no time during pre-suit did PREMIER or HOSPITAL inform Plaintiff of either MAHMOUD or SCHWARTZ leaving their employment despite Plaintiff inquiring about vicarious liability and business relationships during pre-suit.

33. Defendant, MAHMOUD was served individually a Notice of Intent and failed to comply with the requirements of *Fla. Stat.* § 766.106(7)(b) and failed to respond to presuit at all despite being served by certified mail at her address she placed on file with the Florida Department of Health.

34. Defendant,MAHMOUD, was served individually a Notice of Intent through PREMIER and failed to comply with the requirements of *Fla. Stat.* § 766.106(7)(b) and failed to respond to presuit at all despite being served by certified mail through PREMIER.

35. Defendant, PREMIER, failed to comply with the requirements of *Fla. Stat.* § 766, et. Seq. as it failed to respond to pre-suit discovery in good faith.

## . <u>COUNT I</u>
## <u>DIRECT NEGLIGENCE AGAINST ABIGAIL JACKSON, R.N.</u>

36. This is a survival action pursuant to Florida Statute §46.021, based upon the death of Ann M. McGarrity, deceased, who died on February 24, 2018.

37. At all material times, JACKSON was a registered nurse employed by Defendant HOSPITAL.

38. As an employee of Defendant HOSPITAL, JACKSON undertook to care and treat Ann McGarrity during the time she was in HOSPITAL.

39. JACKSON had a duty to provide medical/nursing care to ANN MCGARRITY in accordance with the guidelines and standards applicable to her licensure in the medical community.

40. Ann McGarrity was a patient at HOSPITAL and JACKSON was a nurse working at hospital, assigned to care for decedent, thereby creating a nurse patient relationship with a duty to provide proper medical/nursing care and treatment to Ann McGarrity within the standard of care of the nursing community.

41. JACKSON is and was held to a standard of care of other similarly situated nurses who are charged with the care and/or treatment of persons who were in the conditions of Plaintiff.

42. That during the period of time that ANN MCGARRITY was a patient of JACKSON, notwithstanding the duties, representations and undertakings applicable to JACKSON, and toward PLAINTIFF, JACKSON, by her individual acts, or in the alternative, in any combination of the acts of negligence by said nurse, did not have, and/or did not exercise, the degree of learning, skill, knowledge and diligence set forth below and was guilty of negligence, a careless violation of her duty to the PLAINTIFF and/or malpractice.

43. Said negligence, careless violation of her duty and/or malpractice included, but is not limited to the commission and/or omission of the following acts:

   a. During the time spanning February 22, 2018, and February 23, 2018, JACKSON made at least three attempts to insert a Dobhoff feeding tube into decedent, Ann McGarrity, using CORTRAK despite it not being medically necessary in a patient who had taken her medications by mouth crushed in apple sauce, was on four liters of oxygen by nasal cannula and was not malnourished.

   b. Failure to obtain report from Emergency Room, failure of communication between shifts resulted in failure to document that the family and patient did not want CPR or feeding tubes;

   c. Failure to communicate resulted in JACKSON, who was not properly trained or experienced in inserting a Dobhoff feeding tube with the use of CORTRAK resulting in two punctured lungs right and left causing multiple punctures in each lung. The lack of training/experience caused harm to the decedent and demonstrates JACKSON performed the standard of care and lack of concern for the patient.

   d. JACKSON punctured both lungs resulting in numerous lung punctures.

   e. JACKSON failed to ensure proper placement of the feeding tube in a timely manner, resulting in massive internal bleeding in Plaintiff's decedent and change in mental status, essentially torturing this elderly patient in contravention of the Nurse Practice Act and the community standard of care.

   f. JACKSON failed to establish a method of communication with Decedent such that Decedent could communicate problems during the course of the insertion of

the feeding tube and failed to assess pain or give any pain medications during the procedure despite assessment for pain is one of the vital signs and assessment and documentation was required under prevailing standards of care in the community.

g. JACKSON attempted at least three insertions of the feeding tube while Decedent's hands were tied down, resulting in the patient being completely unable to communicate, causing excruciating pain with no pain medication administered.

h. JACKSON forced the feeding tube into Decedent despite there being obvious signs of misplacement/medical problems.

i. JACKSON otherwise failed to competently place the Dobhoff feeding tube.

j. Failure to maintain accurate medical and/or clinical records led to failing to notify anyone in the chain of her command of her placement attempts, lung punctures and vital signs;

k. JACKSON's failure to accurately and competently chart the medical record led to respiratory therapist placing Ann McGarrity on bipap which is contraindicated for punctured lungs, causing Ann McGarrity's lungs to blow out like a tire.

l. These multiple failures on JACKSON's part were attempted to be covered up by JACKSON and others who she enlisted to help her.

m. Failure to intervene in a timely and appropriate manner ;

n. Failure to accurately assess communication skills of patient, who had aphasia but at admission could communicate by writing and occasionally speaking prior to performing placement of a NG tube, Dobhoff , and use of Cortrak

    o.  Failure to provide proper care, treatment and/or management of patient under the facts and circumstances, as they existed in this matter; for example, failed to obtain supervision, document the entire procedures (did multiple insertions) and then have x-rays taken to verify placement of NG tube or determine if puncture had occurred. Puncture occurred in both lungs; further, failure to document led to failing to notify anyone of her placement attempts and lung punctures; Because of that, the respiratory therapist placed Ms. McGarrity on B-pap, which is contraindicated for punctured lungs, causing her lungs to blow out like a tire, then covered up mistakes and enlisted others to assist her in cover up;

    p.  Caused severe internal bleeding.

    q.  Failed to possess the skills and training required to treat the patient;

    r.  Failure to use a method of treatment for Plaintiff that is usually approved and practiced by other members of the nursing profession in the same or similar circumstance who possess the accepted standard of skill, learning and judgment, and being presented with the facts and circumstances as they existed in this matter would not have performed as the nurse BOYT in this case;

    s.  Failure to respond to the patient's deteriorating/changing condition in a timely manner, resulting in the patient suffering excruciating pain, tied down this elderly patient and failed to give any pain medication whatsoever;

    t.  Failed to notify the physicians, physician assistants, nurse practitioners, nursing charge nurse or anyone in the nursing chain of command immediately upon failure of placement of the Dobhoff tube and lung punctures;

u.  Failed to assess and document the patient's mental status throughout the
procedure of insertion of the Dobhoff tube;

v.  Failed to assess the patient's pain before, during and after the Dobhoff procedure
and documented that Ann McGarrity refused pain medication to cover up her
errors described above, despite the fact that Ann McGarrity became obtunded and
unresponsive during JACKSON's multiple stabs into her lungs while attempting
to insert a Dobhoff feeding tube.

w.  Failed to notice that the patient, in wrist restraints, was having a changed mental
status;

x.  Failure to assess oxygen level until it was dangerously low;

y.  Failure to verify home medications resulting in the administration of a
discontinued drug that caused a change in mental status and agitation; thereafter,
failed to identify the side effects of the medications given that resulted in the
agitation and tied the patient down as a solution along with administering even
more mental status altering drugs;

z.  Failed to follow the DNR (do not resuscitate)/patient directives which were
acknowledged at admission to the hospital and failed to document discussion with
patient of the placement of the Dobhoff tube prior to starting the procedure – there
is no notation of patient understanding the procedure or approving it in
contravention of the DNR/patient directives; and no phone call to the those with
decision making authority to consent to the procedure;

aa. DNR does not mean no treatment and does not mean that the patient accepts
negligence by the medical community;

*McGarrity v. TGH, et. al.*
Third Amended Complaint
Page 10 of 87

bb. Failed to notify the statutory adult children of decedent with decision making authority of any of the above events and tried to hide her negligence when questioned by the family, Decedent's daughter is a RN specializing in respiratory care; other Decedent's daughter is an attorney and Decedent's son is a retired fire fighter/EMT.

cc. Failed to give blood pressure medicine and cardiac medication;

dd. Over-medicated the plaintiff/decedent causing change in mental status with medications and gave medications that are contraindicated in combination with other medications;

ee. Failed to identify serious condition of loss of blood - over 300ml of blood in the cannister which is equal to one unit of blood; failed to document blood loss such that appropriate care could be rendered by other medical professionals over Decedent's care. Attempted to cover up great amount of loss of blood to hide her negligence and patient's dire condition. Nurse JACKSON only documented accurate blood loss after she was called out by Decedent's daughter, a respiratory nurse, and thereafter furiously changed her notes several times in the medical records to obfuscate the actual truth of the patient's horrendous and agonizing condition suffered at JACKSON's negligent hands.

ff. Failed to document, report and treat loss of blood, evident in the suction cannister, blood in mouth and foley catheter urine bag showing frank blood (bright red) all caused by JACKSON.

gg. Caused bruising, deep tissue pressure injury on sternum from unauthorized cardiopulmonary compression;

*McGarrity v. TGH, et. al.*
Third Amended Complaint
Page 11 of 87

hh. Failed to report sentinel event

ii. Failed to understand and appreciate HIPAA privacy laws while providing care and treatment of this patient.

jj. Committed multiple medical errors, including failing to administer appropriate IV fluids in patient resulting in fluid overload and heart complications.

kk. Failed to keep note of vital signs and cardiac rhythm changes in the chart.

ll. Failed to review and/or maintain CORTRAK records from insertion of feeding tube that would confirm proper placement of Dobhoff in contravention to manufacturer's usage instructions and hospital policy, resulting in lack of continuity of care and failure to timely diagnose multiple lung punctures.

44. That as a direct and proximate result of any of the above acts of negligence by Defendant JACKSON, Ann McGarrity was significantly and permanently damaged with resulting pain and agony, suffering, cut her life expectancy, disfigurement, mental anguish, loss of capacity for the enjoyment of life and an aggravation of a previously existing injury or condition which caused Plaintiff to suffer unnecessarily and incur significant medical and related expenses.

45. As a direct and proximate result of the negligence by Defendant JACKSON, Plaintiff suffered pain, loss of enjoyment of her life, loss of interaction with family, thus resulting in permanent damage to Plaintiff's overall health and bodily condition; put her at significantly higher risk for health problems and reduced her life expectancy. Plaintiff suffered permanent bodily injury resulting in pain and suffering, disability, disfigurement, mental anguish, loss of the capacity for the enjoyment of life, expense of

medical treatment, inability to lead a normal life, great additional medical and related

medical expenses for care and treatment of the damage done.

 **WHEREFORE**, Plaintiff demands judgment against for damages, interest, costs

and any other relief that this Court deems just and proper. PLAINTIFFS further demands

a trial by jury on all issues triable as a matter of right.

### COUNT II - DIRECT NEGLIGENCE AGAINST ASHLEY BOYT, RN

46. This is a survival action pursuant to Florida Statute §46.021, based upon the death of Ann

 M. McGarrity, deceased, who died on February 24, 2018.

47. At all material times, BOYT was a registered nurse employed by Defendant HOSPITAL.

48. As an employee of Defendant HOSPITAL, BOYT undertook to care and treat Ann

 McGarrity during the time she was in HOSPITAL.

49. BOYT had a duty to provide medical/nursing care to ANN MCGARRITY in accordance

 with the guidelines and standards applicable to her licensure in the medical community.

50. Ann McGarrity was a patient at HOSPITAL and BOYT was a nurse working at hospital,

 assigned to care for decedent, thereby creating a nurse patient relationship with a duty to

 provide proper medical/nursing care and treatment to Ann McGarrity within the standard

 of care of the nursing community.

51. BOYT is and was held to a standard of care of other similarly situated nurses who are

 charged with the care and/or treatment of persons who were in the conditions of Plaintiff.

52. That during the period of time that ANN MCGARRITY was a patient of BOYT,

 notwithstanding the duties, representations and undertakings applicable to BOYT, and

 toward Ann McGarrity, BOYT, by her individual acts, or in the alternative, in any

 combination of the acts of negligence by said nurse, did not have, and/or did not exercise,

the degree of learning, skill, knowledge and diligence set forth below and was guilty of negligence, a careless violation of her duty to Ann McGarrity and/or malpractice.

53. Said negligence, careless violation of her duty and/or malpractice included, but is not limited to the commission and/or omission of the following acts:

a. Punctured both lungs resulting in numerous lung punctures.

b. Failed to ensure proper placement of the feeding tube in a timely manner, resulting in massive internal bleeding in Plaintiff's decedent.

c. Failed to establish a method of communication with Decedent such that Decedent could communicate problems with medical providers during the course of the insertion of the feeding tube.

d. Attempted insertions of the feeding tube while Decedent's hands were tied down, resulting in the patient being completely unable to communicate due to expressive aphasia.

e. Forced the feeding tube into Decedent despite there being obvious signs of misplacement/medical problems.

f. Otherwise failed to competently place the feeding tube in additional ways that will be further determined through discovery.

g. Failure to maintain accurate medical and/or clinical records;

h. Failure to intervene in a timely and appropriate manner ;

i. Failure to accurately assess communication skills of patient, who had aphasia but at admission could communicate by writing and occasionally speaking prior to performing placement of a NG tube, Dobhoff , and use of Cortrak

j.  Failure to have proper training in insertion of Dobhoff and use of Cortrak resulting in two punctured lungs right and left, causing pneumothorax, demonstrating a lack of care or concern for the patient;

k.  Failure to provide proper care, treatment and/or management of patient under the facts and circumstances, as they existed in this matter; for example, failed to obtain supervision, document the entire procedures (did multiple insertions) and then have x-rays taken to verify placement of NG tube or determine if puncture had occurred. Puncture occurred in both lungs; further, failure to document led to failing to notify anyone of her placement attempts and lung punctures; Because of that, the respiratory therapist placed Ms. McGarrity on B-pap, which is contraindicated for punctured lungs, causing her lungs to blow out like a tire, then covered up mistakes and enlisted others to assist her in cover up;

l.  Caused severe internal bleeding.

m.  Failed to possess the skills and training required to treat the patient;

n.  Failure to use a method of treatment for Plaintiff that is usually approved and practiced by other members of the nursing profession in the same or similar circumstance who possess the accepted standard of skill, learning and judgment, and being presented with the facts and circumstances as they existed in this matter would not have performed as the nurse BOYT in this case;

o.  Failure to respond to the patient's changing conditions in a timely manner, resulting in the patient suffering excruciating pain, tied down this elderly patient and failed to give any pain medication whatsoever;

p.   Failed to notify the physicians, physician assistants, nurse practitioners, nursing charge nurse or anyone in the nursing chain of command immediately upon failure of placement of the Dobhoff tube and lung punctures;

q.   Failed to assess and document the patient's mental status throughout the procedure of insertion of the Dobhoff tube;

r.   Failed to assess the patient's pain before, during and after the procedure;

s.   Failed to notice that the patient, in wrist restraints, was having a changed mental status;

t.   Failure to assess oxygen level until it was dangerously low;

u.   Failure to verify home medications;

v.   Failure to be trained and properly trained in Cortrak and Dobhoff tube placement;

w.   Failed to follow the DNR (do not resuscitate)/patient directives to not place feeding tube which was acknowledged at admission to the hospital and failed to document discussion with patient of the placement of the Dobhoff tube prior to starting the procedure – there is no notation of patient understanding the procedure or approving it in contravention of the DNR/patient directives; and no phone call to the those with decision making authority to consent to the procedure;

x.   DNR does not mean no treatment and does not mean that the patient accepts negligence by the medical community;

y.   Failed to notify the statutory adult children of decedent with decision making authority of any of the above events and tried to hide her negligence when questioned by the family, Decedent's daughter is a RN specializing in respiratory

care; other Decedent's daughter is an attorney and Decedent's son is a retired fire
fighter/EMT.

z.    Failed to give blood pressure medicine and cardiac medication;

aa.  Over-medicated the plaintiff/decedent causing change in mental status with
medications and gave medications that are contraindicated in combination with
other medications;

bb.  Failed to identify serious condition of loss of blood - over 300ml of blood in the
cannister which is equal to one unit of blood; failed to document blood loss such
that appropriate care could be rendered by other medical professionals over
Decedent's care. Attempted to cover up great amount of loss of blood to hide her
negligence and patient's dire condition. Nurse JACKSON only documented
accurate blood loss after she was called out by Decedent's daughter, a respiratory
nurse, and thereafter furiously charted in the records to reveal the actual truth of
the patient's horrendous condition suffered at JACKSON's negligent hands.

cc.  Failed to document, report and treat loss of blood, evident in the suction cannister,
blood in mouth and foley catheter urine bag showing frank blood (bright red)

dd.  Caused bruising, deep tissue pressure injury on sternum from unauthorized
cardiopulmonary compression;

ee.  Failed to report  sentinel event

ff.   Failed to understand and appreciate HIPAA privacy laws while providing care
and treatment of this patient.

gg. Placed patient with at least one known pneumothorax and a second pneumothorax from additional attempts back on BIPAP, a forced breathing apparatus, blowing decedent's lungs out like a tire.

hh. Committed multiple medical errors, including failing to administer appropriate IV fluids in patient resulting in fluid overload and heart complications.

ii. Failed to review and/or maintain CORTRAK records from insertion of feeding tube that would confirm proper placement of Dobhoff in contravention to manufacturer's usage instructions and hospital policy, resulting in lack of continuity of care and failure to timely diagnose multiple lung punctures.

jj. Despite obvious complications in the insertion of the feeding tube, and obvious signs of lung puncture internal bleeding, BOYT placed Ann McGarrity back on a BIPAP machine.

kk. The use of BIPAP in a critically injured patient with collapsed lungs is contraindicated. Essentially, BOYT blew out decedent's lungs, causing excruciating pain and agony.

54. That as a direct and proximate result of any of the above acts of negligence by Defendant BOYT, Ann McGarrity was significantly and permanently damaged with resulting pain and agony, suffering, cut her life expectancy, disfigurement, mental anguish, loss of capacity for the enjoyment of life and an aggravation of a previously existing injury or condition which caused Plaintiff to suffer unnecessarily and incur significant medical and related expenses.

55. As a direct and proximate result of the negligence by Defendant BOYT, Plaintiff suffered pain, loss of enjoyment of her life, loss of interaction with family, thus resulting in

permanent damage to Plaintiff's overall health and bodily condition; put her at significantly higher risk for health problems and reduced her life expectancy. Plaintiff suffered permanent bodily injury resulting in pain and suffering, disability, disfigurement, shortened life expectancy, mental anguish, loss of the capacity for the enjoyment of life, expense of medical treatment, inability to lead a normal life, great additional medical and related medical expenses for care and treatment of the damage done.

**WHEREFORE**, Plaintiff demands judgment against for damages, interest, costs and any other relief that this Court deems just and proper. PLAINTIFFS further demands a trial by jury on all issues triable as a matter of right.

<u>COUNT III</u>
<u>DIRECT NEGLIGENCE AGAINST NICOLA CRAIG, R.N.</u>

56. This is a survival action pursuant to Florida Statute §46.021, based upon the death of Ann M. McGarrity, deceased, who died on February 24, 2018.

57. This is a survival action pursuant to Florida Statute §46.021, based upon the death of Ann M. McGarrity, deceased, who died on February 24, 2018.

58. At all material times, CRAIG was a registered nurse employed by Defendant HOSPITAL.

59. As an employee of Defendant HOSPITAL, CRAIG undertook to care and treat Ann McGarrity during the time she was in HOSPITAL.

60. CRAIG had a duty to provide medical/nursing care to ANN MCGARRITY in accordance with the guidelines and standards applicable to her licensure in the medical community.

61. Ann McGarrity was a patient at HOSPITAL and CRAIG was a nurse working at hospital, assigned to care for decedent, thereby creating a nurse patient relationship with a duty to

provide proper medical/nursing care and treatment to Ann McGarrity within the standard of care of the nursing community.

62. CRAIG is and was held to a standard of care of other similarly situated nurses who are charged with the care and/or treatment of persons who were in the conditions of Plaintiff.

63. That during the period of time that ANN MCGARRITY was a patient of CRAIG, notwithstanding the duties, representations and undertakings applicable to CRAIG, and toward Ann McGarrity, CRAIG, by her individual acts, or in the alternative, in any combination of the acts of negligence by said nurse, did not have, and/or did not exercise, the degree of learning, skill, knowledge and diligence set forth below and was guilty of negligence, a careless violation of her duty to Ann McGarrity and/or malpractice.

64. Said negligence, careless violation of her duty and/or malpractice included, but is not limited to the commission and/or omission of the following acts:

    a. Punctured both lungs resulting in numerous lung punctures.

    b. Failed to ensure proper placement of the feeding tube in a timely manner, resulting in massive internal bleeding in Plaintiff's decedent.

    c. Failed to establish a method of communication with Decedent such that Decedent could communicate problems with medical providers during the course of the insertion of the feeding tube.

    d. Attempted insertions of the feeding tube while Decedent's hands were tied down, resulting in the patient being completely unable to communicate due to expressive aphasia.

    e. Forced the feeding tube into Decedent despite there being obvious signs of misplacement/medical problems.

f.  Otherwise failed to competently place the feeding tube in additional ways that
    will be further determined through discovery.

g.  Failure to maintain accurate medical and/or clinical records;

h.  Failure to intervene in a timely and appropriate manner ;

i.  Failure to accurately assess communication skills of patient, who had aphasia but
    at admission could communicate by writing and occasionally speaking prior to
    performing placement of a NG tube, Dobhoff , and use of Cortrak

j.  Failure to have proper training in insertion of Dobhoff and use of Cortrak
    resulting in two punctured lungs right and left, causing pneumothorax,
    demonstrating a lack of care or concern for the patient;

k.  Failure to provide proper care, treatment and/or management of patient under the
    facts and circumstances, as they existed in this matter; for example, failed to
    obtain supervision, document the entire procedures (did multiple insertions)  and
    then have x-rays taken to verify placement of NG tube or determine if puncture
    had occurred. Puncture occurred in both lungs; further, failure to document led to
    failing to notify anyone of her placement attempts and lung punctures; Because of
    that, the  respiratory therapist placed Ms. McGarrity on B-pap, which is
    contraindicated for punctured lungs, causing her lungs to blow out like a tire, then
    covered up mistakes and enlisted others to assist her in cover up;

l.  Caused severe internal bleeding.

m.  Failed to possess the skills and training required to treat the patient;

n.  Failure to use a method of treatment for Plaintiff  that is usually approved and
    practiced by other members of the nursing profession in the same  or  similar

circumstance who possess the accepted standard of skill, learning and judgment, and being presented with the facts and circumstances as they existed in this matter would not have performed as the nurse CRAIG in this case;

o. Failure to respond to the patient's changing conditions in a timely manner, resulting in the patient suffering excruciating pain, tied down this elderly patient and failed to give any pain medication whatsoever;

p. Failed to notify the physicians, physician assistants, nurse practitioners, nursing charge nurse or anyone in the nursing chain of command immediately upon failure of placement of the Dobhoff tube and lung punctures;

q. Failed to assess and document the patient's mental status throughout the procedure of insertion of the Dobhoff tube;

r. Failed to assess the patient's pain before, during and after the procedure;

s. Failed to notice that the patient, in wrist restraints, was having a changed mental status;

t. Failure to assess oxygen level until it was dangerously low;

u. Failure to verify home medications;

v. Failure to be trained and properly trained in Cortrak and Dobhoff tube placement;

w. Failed to follow the DNR (do not resuscitate)/patient directives to not place feeding tube which was acknowledged at admission to the hospital and failed to document discussion with patient of the placement of the Dobhoff tube prior to starting the procedure – there is no notation of patient understanding the procedure or approving it in contravention of the DNR/patient directives; and no

phone call to the those with decision making authority to consent to the procedure;

x.  DNR does not mean no treatment and does not mean that the patient accepts negligence by the medical community;

y.  Failed to notify the statutory adult children of decedent with decision making authority of any of the above events and tried to hide her negligence when questioned by the family, Decedent's daughter is a RN specializing in respiratory care; other Decedent's daughter is an attorney and Decedent's son is a retired fire fighter/EMT.

z.  Failed to give blood pressure medicine and cardiac medication;

aa. Over-medicated the plaintiff/decedent causing change in mental status with medications and gave medications that are contraindicated in combination with other medications;

bb. Failed to identify serious condition of loss of blood - over 300ml of blood in the cannister which is equal to one unit of blood; failed to document blood loss such that appropriate care could be rendered by other medical professionals over Decedent's care. Attempted to cover up great amount of loss of blood to hide her negligence and patient's dire condition. Nurse JACKSON only documented accurate blood loss after she was called out by Decedent's daughter, a respiratory nurse, and thereafter furiously charted in the records to reveal the actual truth of the patient's horrendous condition suffered at JACKSON's negligent hands.

cc. Failed to document, report and treat loss of blood, evident in the suction cannister, blood in mouth and foley catheter urine bag showing frank blood (bright red)

dd. Caused bruising, deep tissue pressure injury on sternum from unauthorized cardiopulmonary compression;

ee. Failed to report sentinel event

ff. Failed to understand and appreciate HIPAA privacy laws while providing care and treatment of this patient.

gg. Placed patient with at least one known pneumothorax and a second pneumothorax from additional attempts back on BIPAP, a forced breathing apparatus, blowing decedent's lungs out like a tire.

hh. Committed multiple medical errors, including failing to administer appropriate IV fluids in patient resulting in fluid overload and heart complications.

ii. Failed to review and/or maintain CORTRAK records from insertion of feeding tube that would confirm proper placement of Dobhoff in contravention to manufacturer's usage instructions and hospital policy, resulting in lack of continuity of care and failure to timely diagnose multiple lung punctures.

jj. Despite obvious complications in the insertion of the feeding tube, and obvious signs of lung puncture internal bleeding, CRAIG placed Ann McGarrity back on a BIPAP machine.

kk. The use of BIPAP in a critically injured patient with collapsed lungs is contraindicated. Essentially, CRAIG blew out decedent's lungs, causing excruciating pain and agony.

65. That as a direct and proximate result of any of the above acts of negligence by Defendant CRAIG, Ann McGarrity was significantly and permanently damaged with resulting pain and agony, suffering, cut her life expectancy, disfigurement, mental anguish, loss of

capacity for the enjoyment of life and an aggravation of a previously existing injury or condition which caused Plaintiff to suffer unnecessarily and incur significant medical and related expenses.

66. As a direct and proximate result of the negligence by Defendant CRAIG, Ann McGarrity suffered pain, loss of enjoyment of her life, loss of interaction with family, thus resulting in permanent damage to Plaintiff's overall health and bodily condition; put her at significantly higher risk for health problems and reduced her life expectancy. Plaintiff suffered permanent bodily injury resulting in pain and suffering, disability, disfigurement, mental anguish, loss of the capacity for the enjoyment of life, expense of medical treatment, inability to lead a normal life, great additional medical and related medical expenses for care and treatment of the damage done.

**WHEREFORE**, Plaintiff demands judgment for damages, interest, costs and any other relief that this Court deems just and proper. PLAINTIFF further demands a trial by jury on all issues triable as a matter of right.

## COUNT IV
### BATTERY AGAINST DEFENDANT ABIGAIL JACKSON, RN

67. This is a survival action pursuant to Florida Statute §46.021, based upon the death of Ann M. McGarrity, deceased, who died on February 24, 2018.

68. At all times material to this action, Plaintiff's decedent, Ann McGarrity, had in place a valid Do Not Resuscitate order ("DNR") with HOSPITAL.

69. JACKSON made intentional contact with DECEDENT and intended to make contact with Ann McGarrity while she was a patient at HOSPITAL.

70. Despite a DNR being in place, JACKSON made brutal chest compressions on Ann McGarrity that Ann McGarrity did not authorize, want or permit.

71. JACKSON's brutal chest compressions were offensive to Ann McGarrity and resulted in severe injury, including, but not limited to, internal bleeding, broken ribs, hematoma and disfigurement.

72. Furthermore, JACKSON forced a feeding tube into Ann McGarrity's lungs on multiple occasions, stabbing her multiple times without her consent.

73. JACKSON's multiple stabs into Ann McGarrity's lungs and brutal chest compressions in contravention to the DNR order was offensive to McGarrity.

74. Ann McGarrity did not authorize, want or permit JACKSON to assault her while she was chained to a bed in restraints.

75. JACKSON intended to touch Ann McGarrity in these instances identified in this paragraph and said contacts JACKSON made with Ann McGarrity were offensive to Ann McGarrity.

76. Article I § 23 of the Florida Constitution gives every person the right to be let alone in their private life.

77. A patient has the categorical authority to refuse even life-saving medical treatment; indeed, medical providers who treat patients despite such refusal are criminally and civilly liable for assault and battery.

78. The right to refuse medical treatment is not lost even when a person becomes incompetent. Authority then passes to putative next of kin under *Fla. Stat.* § 765.401..

79. A refusal of care can be done orally or in writing by the patient indicating a directive evidencing intention to have future medical care withheld.

80. Ann McGarrity completed a DNR form and gave directions to HOSPITAL that no feeding tube of any kind should be used in her care.

81. As a result, of JACKSON's multiple batteries, Ann McGarrity suffered pain, loss of enjoyment of her life, loss of interaction with family, thus resulting in permanent damage to Plaintiff's overall health and bodily condition; put her at significantly higher risk for health problems and reduced her life expectancy. Plaintiff suffered permanent bodily injury resulting in pain and suffering, disability, disfigurement, mental anguish, loss of the capacity for the enjoyment of life, expense of medical treatment, inability to lead a normal life, great additional medical and related medical expenses for care and treatment of the damage done.

**WHEREFORE**, Plaintiff demands judgment for damages, interest, costs and any other relief that this Court deems just and proper. PLAINTIFF further demands a trial by jury on all issues triable as a matter of right.

## COUNT V
## BATTERY AGAINST DEFENDANT NICOLA CRAIG, RN

82. This is a survival action pursuant to Florida Statute §46.021, based upon the death of Ann M. McGarrity, deceased, who died on February 24, 2018.

83. At all times material to this action, Plaintiff's decedent, Ann McGarrity, had in place a valid Do Not Resuscitate order ("DNR") with HOSPITAL.

84. CRAIG made intentional contact with DECEDENT and intended to make contact with Ann McGarrity while she was a patient at HOSPITAL.

85. Despite a DNR being in place, CRAIG made brutal chest compressions on Ann McGarrity that Ann McGarrity did not authorize, want or permit.

86. CRAIG'S brutal chest compressions were offensive to Ann McGarrity and resulted in severe injury, including, but not limited to, internal bleeding, broken ribs, hematoma and disfigurement.

87. Furthermore, CRAIG forced a feeding tube into Ann McGarrity's lungs on multiple occasions, stabbing her multiple times without her consent.

88. CRAIG's multiple stabs into Ann McGarrity's lungs and brutal chest compressions in contravention to the DNR order was offensive to McGarrity.

89. Ann McGarrity did not authorize, want or permit CRAIG to assault her while she was chained to a bed in restraints.

90. CRAIG intended to touch Ann McGarrity in these instances identified in this paragraph and said contacts CRAIG made with Ann McGarrity were offensive to Ann McGarrity.

91. Article I § 23 of the Florida Constitution gives every person the right to be let alone in their private life.

92. A patient has the categorical authority to refuse even life-saving medical treatment; indeed, medical providers who treat patients despite such refusal are criminally and civilly liable for assault and battery.

93. The right to refuse medical treatment is not lost even when a person becomes incompetent. Authority then passes to putative next of kin under *Fla. Stat.* § 765.401..

94. A refusal of care can be done orally or in writing by the patient indicating a directive evidencing intention to have future medical care withheld.

95. Ann McGarrity completed a DNR form and gave directions to HOSPITAL that no feeding tube of any kind should be used in her care.

96. As a result, of CRAIG's multiple batteries, Ann McGarrity suffered pain, loss of

enjoyment of her life, loss of interaction with family, thus resulting in permanent damage

to Plaintiff's overall health and bodily condition; put her at significantly higher risk for

health problems and reduced her life expectancy. Plaintiff suffered permanent bodily

injury resulting in pain and suffering, disability, disfigurement, mental anguish, loss of

the capacity for the enjoyment of life, expense of medical treatment, inability to lead a

normal life, great additional medical and related medical expenses for care and treatment

of the damage done.

**WHEREFORE**, Plaintiff demands judgment for damages, interest, costs and any other

relief that this Court deems just and proper. PLAINTIFF further demands a trial by jury on all

issues triable as a matter of right.


## <u>COUNT VI</u>
## <u>BATTERY AGAINST DEFENDANT ASHLEY BOYT, RN</u>

97. This is a survival action pursuant to Florida Statute §46.021, based upon the death of Ann

M. McGarrity, deceased, who died on February 24, 2018.

98. At all times material to this action, Plaintiff's decedent, Ann McGarrity, had in place a

valid Do Not Resuscitate order ("DNR") with HOSPITAL.

99. BOYT made intentional contact with DECEDENT and intended to make contact with

Ann McGarrity while she was a patient at HOSPITAL.

100.    Despite a DNR being in place, BOYT made brutal chest compressions on Ann

McGarrity that Ann McGarrity did not authorize, want or permit.

101.    BOYT's brutal chest compressions were offensive to Ann McGarrity and resulted in severe injury, including, but not limited to, internal bleeding, broken ribs, hematoma and disfigurement.

102.    Furthermore, BOYT forced a feeding tube into Ann McGarrity's lungs on multiple occasions, stabbing her multiple times without her consent.

103.    BOYT multiple stabs into Ann McGarrity's lungs and brutal chest compressions in contravention to the DNR order was offensive to McGarrity.

104.    Ann McGarrity did not authorize, want or permit BOYT to assault her while she was chained to a bed in restraints.

105.    BOYT intended to touch Ann McGarrity in these instances identified in this paragraph and said contacts CRAIG made with Ann McGarrity were offensive to Ann McGarrity.

106.    Article I § 23 of the Florida Constitution gives every person the right to be let alone in their private life.

107.    A patient has the categorical authority to refuse even life-saving medical treatment; indeed, medical providers who treat patients despite such refusal are criminally and civilly liable for assault and battery.

108.    The right to refuse medical treatment is not lost even when a person becomes incompetent. Authority then passes to putative next of kin under *Fla. Stat.* § 765.401..

109.    A refusal of care can be done orally or in writing by the patient indicating a directive evidencing intention to have future medical care withheld.

110.    Ann McGarrity completed a DNR form and gave directions to HOSPITAL that no feeding tube of any kind should be used in her care.

111.     As a result, of BOYT's multiple batteries, Ann McGarrity suffered pain, loss of

enjoyment of her life, loss of interaction with family, thus resulting in permanent damage

to Plaintiff's overall health and bodily condition; put her at significantly higher risk for

health problems and reduced her life expectancy. Plaintiff suffered permanent bodily

injury resulting in pain and suffering, disability, disfigurement, mental anguish, loss of

the capacity for the enjoyment of life, expense of medical treatment, inability to lead a

normal life, great additional medical and related medical expenses for care and treatment

of the damage done.

**WHEREFORE**, Plaintiff demands judgment  for damages, interest, costs and any other

relief that this Court deems just and proper.  PLAINTIFF further demands a trial by jury on all

issues triable as a matter of right.

### COUNT VII
### VICARIOUS LIABILITY AGAINST FLORIDA HEALTH SCIENCES CENTER, INC. D/B/A TAMPA GENERAL HOSPITAL

112.     This is a survival action pursuant to Florida Statute §46.021, based upon the death

of Ann M. McGarrity, deceased, who died on February 24, 2018.

113.     On or about February 20, 2018, and at all material times thereafter, Plaintiff's

decedent, Ann M. McGarrity, employed the Defendant HOSPITAL including its

physicians and nurses and other agents and employees for the purpose of medical

treatment of a respiratory issue.

114.     In employing the said Defendant HOSPITAL, Plaintiff's decedent Ann M.

McGarrity relied upon the assertion that the HOSPITAL was accredited and licensed as a

HOSPITAL in the State of Florida to provide customary HOSPITAL and/or medical care

and to maintain its facility in a working and safe manner, and that it held itself out to be

an expert in providing medical care, including, but not limited to, physician and/or

nursing care, and was specially skilled in the performance of such medical and nursing

care through its agents/apparent agents and employees.

115.     On or about February 20, 2018, and at all material times thereafter, agents and

employees of Defendant HOSPITAL were asked to provide medical care to Ann M.

McGarrity, by the Defendant HOSPITAL and thus were also employed by the decedent

Ann M. McGarrity.

116.     On or about February 20, 2018, at 10:58 a.m., Ann M. McGarrity walked into the

HOSPITAL emergency room without aid of any assistive devices to seek care due to a

complaint of shortness of breath, and she was accompanied by her son Richard

McGarrity, a retired fire fighter/EMT.

117.     At all times material, Ann M. McGarrity had some difficulty in being understood

while speaking due to a previous stroke which resulted in expressive aphasia. However,

she could write if a listener had trouble understanding her through verbal communication.

118.     Plaintiff's Decedent, Ann M. McGarrity, signed a DNR form upon her admission

to the hospital. Said DNR was entered into the record on February 20, 2018, by Moiya

Brown, ARNP at 12:19 p.m., and this was cosigned electronically on February 22, 2018,

at 4:48 a.m.by Defendant, MAHMOUD.

119.     Ann McGarrity's  healthcare surrogates were identified in initial paperwork to the

HOSPITAL.

120.     Ann McGarrity's healthcare surrogates are also defined by *Fla. Stat.* § 765.401 as

"an adult child of the patient, or if the patient has more than one adult child, a majority of

the adult children who are reasonably available for consultation."

121.　　HOSPITAL identified Ann Celender (patient's daughter) and Richard McGarrity, patient's son, as the contacts on file.

122.　　Further, Plaintiff's decedent gave the hospital a directive during her admission that no feeding tubes of any kind should be used at HOSPITAL during her care and treatment.

123.　　Despite ANN MCGARRITY'S directive to the hospital that no feeding tube should be used, Defendant HOSPITAL, by and through their employees, agents, and servants, inserted a Dobhoff feeding tube into ANN MCGARRITY using the CORTRAK insertion guide.

124.　　HOSPITAL'S employees, Defendants JACKSON, BOYT and CRAIG and others yet unknown to the Plaintiff but expected to be learned through discovery, attempted insertion of the Dobhoff Feeding Tube at least three times during the time spanning February 22, 2018, and February 23, 2018.

125.　　At no time prior to the insertion of the Dobhoff feeding tube was Ann McGarrity informed this procedure was taking place, nor did she or her healthcare proxies reasonably available for consultation give consent for the procedure.

126.　　Rather, Decedent gave a directive to the hospital that no feeding tubes of any kind should be used in her care.

127.　　The HOSPITAL, by and through its employees/agents/apparent agents and/or independent contractors to include  JACKSON, BOYT and CRAIG  fell below the applicable standard of care to wit:

　　　　a.　Punctured the left and right lung, resulting in bilateral pneumothoraxes.

b.  Despite obvious complications with insertion attempts, HOSPITAL, by and through nurses JACKSON, BOYT and CRAIG continued additional attempts to insert the feeding tube when doing so was contraindicated.

c.  HOSPITAL, by and through its nurses JACKSON, BOYT and CRAIG and others yet unknown to the Plaintiff, failed to ensure adequate placement of the Dobhoff feeding tube in a timely manner, resulting in massive internal bleeding to the patient.

d.  HOSPITAL, by and through its employees/agents/assigns overloaded patient with fluids.

e.  HOSPITAL, by and through its agents/employees/assigns and the actions of JACKSON, BOYT and CRAIG failed to ensure adequate placement of the Dobhoff feeding tube in a timely manner, resulting in massive internal bleeding to the patient.

f.  HOSPITAL, by and through its employees/agents/assigns overmedicated the patient.

g.  HOSPITAL, by and through its employees/agents/apparent agents and/or independent contractors failed to verify patient's home medications.

h.  HOSPITAL, by and through its employees/agents/apparent agents and/or independent contractors to include JACKSON, BOYT and CRAIG failed to provide competent care for the Plaintiff.

i.  HOSPITAL, by and through its employees/agents/apparent agents and/or independent contractors to include JACKSON, BOYT and CRAIG and others yet unknown to Plaintiff, failed to establish a method of communication with

Decedent such that patient could communicate problems with HOSPITAL staff during the course of the insertion of the feeding tube.

j.   HOSPITAL by and through its employees/agents/apparent agents and/or independent contractors attempted insertions of the feeding tube while Decedent's arms were restrained, resulting in the patient being completely unable to communicate.

k.   HOSPITAL by and through its employees/agents/apparent agents and/or independent contractors forced the feeding tube into Decedent despite there being obvious signs of misplacement/medical problems.

l.   HOSPITAL by and through its employees/agents/apparent agents and/or independent contractors failed to competently place the feeding tube in additional ways that will be further determined through discovery.

m.   HOSPITAL failed to ensure its employees/agents/apparent agents and/or independent contractors followed the proper procedures to place the Dobhoff feeding tube using the CORTRAK insertion guide as recommended by the manufacturer.

n.   HOSPITAL by and through its employees/agents/apparent agents and/or independent contractors overloaded the patient with fluids resulting in fluid overload.

o.   HOSPITAL, by and through its employees/agents/apparent agents and/or independent contractors failed to properly administer medications required for patient's survival.

p.   HOSPITAL, by and through its employees/agents/apparent agents and/or independent contractors failed to intervene in a timely manner.

q.   Punctured both lungs resulting in numerous lung punctures.

r.   Failed to ensure proper placement of the feeding tube in a timely manner, resulting in massive internal bleeding in Plaintiff's decedent.

s.   Failed to establish a method of communication with Decedent such that Decedent could communicate problems with medical providers during the course of the insertion of the feeding tube.

t.   Attempted insertions of the feeding tube while Decedent's hands were tied down, resulting in the patient being completely unable to communicate due to expressive aphasia.

u.   Forced the feeding tube into Decedent despite there being obvious signs of misplacement/medical problems.

v.   Otherwise failed to competently place the feeding tube in additional ways that will be further determined through discovery.

w.   Failure to maintain accurate medical and/or clinical records;

x.   Failure to intervene in a timely and appropriate manner ;

y.   Failure to properly assess communication skills of patient, who had aphasia but at admission could communicate by writing and occasionally speaking prior to performing placement of a NG tube, Dobhoff , and use of Cortrak

z.   Failure to have proper training in insertion of Dobhoff and use of Cortrak resulting in two punctured lungs right and left, causing pneumothorax, demonstrating a lack of care or concern for the patient;

aa. Failure to provide proper care, treatment and/or management of patient under the facts and circumstances, as they existed in this matter; for example, failed to obtain supervision, document the entire procedures (did multiple insertions) and then have x-rays taken to verify placement of NG tube or determine if puncture had occurred. Puncture occurred in both lungs; further, failure to document led to failing to notify anyone of her placement attempts and lung punctures; Because of that, the respiratory therapist placed Ms. McGarrity on B-pap, which is contraindicated for punctured lungs, causing her lungs to blow out like a tire, then covered up mistakes and enlisted others to assist her in cover up;

bb. Caused severe internal bleeding.

cc. Failed to possess the skills and training required to treat the patient;

dd. Failure to use a method of treatment for Plaintiff that is usually approved and practiced by other members of the nursing profession in the same or similar circumstance who possess the accepted standard of skill, learning and judgment, and being presented with the facts and circumstances as they existed in this matter would not have performed as the nurse BOYT in this case;

ee. Failure to respond to the patient's changing conditions in a timely manner, resulting in the patient suffering excruciating pain, tied down this elderly patient and failed to give any pain medication whatsoever;

ff. Failed to notify the physicians, physician assistants, nurse practitioners, nursing charge nurse or anyone in the nursing chain of command immediately upon failure of placement of the Dobhoff tube and lung punctures;

gg. Failed to assess and document the patient's mental status throughout the procedure of insertion of the Dobhoff tube;

hh. Failed to assess the patient's pain before, during and after the procedure;

ii. Failed to notice that the patient, in wrist restraints, was having a changed mental status;

jj. Failure to assess oxygen level until it was dangerously low;

kk. Failure to verify home medications;

ll. Failure to be trained and properly trained in Cortrak and Dobhoff tube placement;

mm. Failed to follow the DNR (do not resuscitate)/patient directives which were acknowledged at admission to the hospital and failed to document discussion with patient of the placement of the Dobhoff tube prior to starting the procedure – there is no notation of patient understanding the procedure or approving it in contravention of the DNR/patient directives; and no phone call to the those with decision making authority to consent to the procedure;

nn. DNR does not mean no treatment and does not mean that the patient accepts negligence by the medical community;

oo. Failed to notify the statutory healthcare proxy's, adult children of decedent with decision making authority, of any of the treatments of ANN MCGARRITY and engaged in a "cover up" to hide the negligence when questioned by the family, Decedent's daughter is a RN specializing in respiratory care; other Decedent's daughter is an attorney and Decedent's son is a retired fire fighter/EMT.

pp. Failed to give blood pressure medicine and cardiac medication;

qq. Over-medicated the plaintiff/decedent causing change in mental status with medications and gave medications that are contraindicated in combination with other medications;

rr. Failed to identify serious condition of loss of blood - over 300ml of blood in the cannister which is equal to one unit of blood; failed to document blood loss such that appropriate care could be rendered by other medical professionals over Decedent's care. Attempted to cover up great amount of loss of blood to hide her negligence and patient's dire condition.

ss. Failed to document, report and treat loss of blood, evident in the suction cannister, blood in mouth and foley catheter urine bag showing frank blood (bright red)

tt. Caused bruising, deep tissue pressure injury on sternum from unauthorized cardiopulmonary compression;

uu. Failed to report  sentinel event

vv. Failed to understand and appreciate HIPAA privacy laws while providing care and treatment of this patient.

ww.        Placed patient with at least one known pneumothorax and a second pneumothorax from additional attempts back on BIPAP, a forced breathing apparatus, blowing decedent's lungs out like a tire.

xx. Committed multiple medical errors, including failing to administer appropriate IV fluids in patient resulting in fluid overload and heart complications.

yy. Failed to review and/or maintain CORTRAK records from insertion of feeding tube that would confirm proper placement of Dobhoff in contravention to

manufacturer's usage instructions and hospital policy, resulting in lack of

continuity of care and failure to timely diagnose multiple lung punctures.

zz. Failed to properly document patient's weight and/or weight the patient upon

transfers.

aaa.   Chemically and physically restrained patient against her will.

bbb.   Failed to ensure medications contraindicated for the patient were not

given.

ccc.   Failed to document and follow directives given by the patient.

The actions of HOSPITAL by and through its employees/agents/apparent agents, to include

JACKSON, BOYT, CRAIG described in this count fell below the applicable standard of care in

the community.

128.    HOSPITAL is vicariously liable for the negligent actions of its

agents/servants/employees/apparent agents/independent contractors to include

JACKSON, BOYT and CRAIG under the doctrine of *respondeat superior.*

129.    That as a direct and proximate result of any of the above acts of vicarious

negligence by Defendant HOSPITAL, Ann McGarrity was significantly and permanently

damaged with resulting pain and agony, suffering, cut her life expectancy, disfigurement,

mental anguish, loss of capacity for the enjoyment of life and an aggravation of a

previously existing injury or condition which caused Plaintiff to suffer unnecessarily and

incur significant medical and related expenses.

130.    As a direct and proximate result of the vicarious negligence by Defendant

HOSPITAL, Plaintiff suffered pain, loss of enjoyment of her life, loss of interaction with

family, thus resulting in permanent damage to Plaintiff's overall health and bodily

condition; put her at significantly higher risk for health problems and reduced her life expectancy. Plaintiff suffered permanent bodily injury resulting in pain and suffering, disability, disfigurement, mental anguish, loss of the capacity for the enjoyment of life, expense of medical treatment, inability to lead a normal life, great additional medical and related medical expenses for care and treatment of the damage done.

**WHEREFORE**, Plaintiff demands judgment for damages, interest, costs and any other relief that this Court deems just and proper. PLAINTIFF further demands a trial by jury on all issues triable as a matter of right.

## COUNT VIII

## DIRECT NEGLIGENCE AGAINST HOSPITAL

131.    This is a survival action pursuant to Florida Statute §46.021, based upon the death of Ann M. McGarrity, deceased, who died on February 24, 2018.

132.    On or about February 20, 2018, and at all material times thereafter, Plaintiff's decedent, Ann M. McGarrity, employed the Defendant HOSPITAL including its physicians and nurses and other agents/employees/apparent agents/independent contractors for the purpose of medical treatment of a respiratory issue.

133.    In employing the said Defendant HOSPITAL, Plaintiff's decedent Ann M. McGarrity relied upon the assertion that the HOSPITAL was accredited and licensed as a HOSPITAL in the State of Florida to provide customary HOSPITAL and/or medical care and to maintain its facility in a working and safe manner, and that it held itself out to be an expert in providing medical care, including, but not limited to, physician and/or nursing care, and was specially skilled in the performance of such medical and nursing care through its agents/apparent agents and employees.

134.    On or about February 20, 2018, and at all material times thereafter, agents/employees/servants/apparent agents and/or independent contractors of Defendant HOSPITAL were asked to provide medical care to Ann M. McGarrity, by the Defendant HOSPITAL and thus were also employed by the decedent Ann M. McGarrity.

135.    HOSPITAL was negligent in performing its duties during the time Ann McGarrity was a patient there by virtue of committing the following negligent acts:

a.  Failing to ensure that patient's DNR status and directive to hospital to not use any feeding tubes in her care and treatment were appropriately documented and followed due to its failure to have procedures in place to communicate patient directives to those responsible for patient care.

b.  Failing to establish procedures for properly identifying patients DNR/DNI/No Feeding Tube patient.

c.  Failing to properly supervise and/or train its employees/agents/apparent agents and/or independent contractors to take reasonable steps to ensure that end of life planning documents are properly documented.

d.  Failing to properly supervise and/or train its employees/agents/apparent agents and/or independent contractors on hospital policies for transmitting and document patient directives.

e.  Failing to properly supervise/train its employees/agents/apparent agents and/or independent contractors on HIPAA's medical privacy rules.

f.  Failing to properly supervise/train its employees/agents/apparent agents and/or independent contractors on reporting medical errors.

g.   Failing to properly supervise/train its employees/agents/apparent agents and/or independent contractors on reporting sentinel events and what constitutes a sentinel event.

h.   Failing to properly train/supervise its employees regarding  the power of healthcare proxies for incapacitated patients.

i.   Failing to train its employees/agents/apparent agents and/or independent contractors to properly document medical procedures in a timely, accurate and consistent manner.

j.   Failing to supervise its employees/agents/apparent agents and/or independent contractors to ensure employees timely report sentinel events.

k.   Failing to supervise and train its employees/agents/apparent agents and/or independent contractors for the proper use of CORTRAK.

l.   Failing to maintain CORTRAK records such that placement of Dobhoff tubes using CORTRAK can be readily confirmed to ensure proper continuity of care.

m.   Failing to have in place procedures that preclude employees/agents/apparent agents and/or independent contractors from destroying and/or falsifying Ann McGarrity's medical records.

n.   Failing to train/supervise its employees/apparent agents and/or independent contractors to verify patient's medications.

o.   Failing to train and supervise its employees/agents/apparent agents and/or independent contractors on the signs and symptoms of over-medicating patients and changes in patient's medical status.

p. Failing to train and supervise its employees/agents/apparent agents and/or independent contractors on the proper and safe use of restraints, especially in patients undergoing medical procedures.

q. Failing to train and supervise its employees/agents/apparent agents and/or independent contractors on adequately communicating with patients and assessing communication skills in patients.

r. Failure to train and supervise its employees/agents/apparent agents and/or independent contractors to properly assess communication skills of patients with "severe dementia" and/or "expressive aphasia."

s. Failure to train and supervise its employees/agents/apparent agents and/or independent contractors on the proper assessment of pain, vital signs and cardiac rhythm according to standards accepted for similar providers in the medical community.

t. Failing to train/supervise its employees/agents/apparent agents and/or independent contractors on the proper use of auxiliary aids and communication aids to patients with communication disabilities.

u. Failing to have in place a system to warn its employees/agents/apparent agents and/or independent contractors on the proper administration of medications that would warn the prescriber/dispenser of the medication about medications being contraindicated when given in combination with other drugs.

v. Failing to train/supervise its employees on proper documentation of CPR and rapid response team calls.

w.  Failing to train/supervise its employees/agents/apparent agents and/or independent contractors to assess and document changes in mental status of the patient.

x.  Failure to train/supervise its employees/agents/apparent agents and/or independent contractors on ensuring patient's healthcare proxies timely notified when faced with grave changes in patient's condition.

y.  Failure to train/supervise its employees on HIPAA training.

z.  Failure to train/supervise its employees/agents/apparent agents and/or independent contractors and have in place a "chain of command" to timely report medical errors.

aa. Failure to foster an environment of honesty and loyalty to patient that precludes destruction of medical records and falsifying medical records to hide malpractice and/or negligence of its employees/agents/servants/apparent agents/independent contractors.

bb. Failure to train/supervise its employees/agents/apparent agents and/or independent contractors on the signs of "over-medication" of a patient.

cc. Failing to maintain adequate medical records in contravention to its legal and fiduciary duties, robbing Plaintiff of proper continuity of care, inflicting agonizing pain and intense suffering of decedent.

dd. Understaffing hospital

136.    As a result of the negligent acts of hospital described herein, A Ann McGarrity suffered pain, loss of enjoyment of her life, loss of interaction with family, thus resulting in permanent damage to Plaintiff's overall health and bodily condition; put her at

significantly higher risk for health problems and reduced her life expectancy. Plaintiff

suffered permanent bodily injury resulting in pain and suffering, disability,

disfigurement, mental anguish, loss of the capacity for the enjoyment of life, expense of

medical treatment, inability to lead a normal life, great additional medical and related

medical expenses for care and treatment of the damage done.

**WHEREFORE**, Plaintiff demands judgment for damages, interest, costs and any

other relief that this Court deems just and proper. PLAINTIFF further demands a trial by

jury on all issues triable as a matter of right.

## COUNT IX: FALSE IMPRISONMENT AGAINST HOSPITAL

137.     This is a survival action pursuant to Florida Statute §46.021, based upon the death

of Ann M. McGarrity, deceased, who died on February 24, 2018.

138.     On or about February 20, 2018, and at all material times thereafter, Plaintiff's

decedent, Ann M. McGarrity, employed the Defendant HOSPITAL including its

physicians and nurses and other agents/employees/apparent agents/independent

contractors for the purpose of medical treatment of a respiratory issue.

139.     In employing the said Defendant HOSPITAL, Plaintiff's decedent Ann M.

McGarrity relied upon the assertion that the HOSPITAL was accredited and licensed as a

HOSPITAL in the State of Florida to provide customary HOSPITAL and/or medical care

and to maintain its facility in a working and safe manner, and that it held itself out to be

an expert in providing medical care, including, but not limited to, physician and/or

nursing care, and was specially skilled in the performance of such medical and nursing

care through its agents/apparent agents/employees and/or independent contractors.

140. This count sets out a claim for False Imprisonment against the Hospital. The Count will address Hospital's duties under Federal Law, but this is not a claim for relief under Federal law. Plaintiff is not seeking to create a cause of action from these laws. Rather, Plaintiff is addressing duties of HOSPITAL and the breach of that duty.

141. On December 8, 2006, the Center for Medicaid and Medicare Services (CMS) issued its Final Rule on Hospital Conditions (Patient Rights). This is found at 42 C.F.R. § 482.13; 71 FR 71378.

142. 42 C.F.R. § 482.13; 71 FR 71378 are required to be followed by hospitals participating in Medicare and/or Medicaid.

143. Defendant HOSPITAL is a Medicare-and Medicaid-participating hospital and is therefore subject to the provisions of 42 C.F.R. § 482.13; 71 FR 71378.

144. 42 C.F.R. § 482(e)(1)(i) defines "restraint" as follows: "any manual method, physical or mechanical device, material or equipment that immobilizes or reduces the ability of a patient to move his or her arms, legs, body or head freely…"

145. 42 C.F.R. § 482.13(e) indicates that restraint "may only be imposed to ensure the immediate physical safety of the patient, a staff member or others…"

146. The use of restraint constitutes a change in a patient's plan of care.

147. HOSPITAL did not notify Plaintiff's healthcare proxies of this plan of care.

148. The original order for use of restraints may only be renewed for up to a total of 24 hours. After the original order expires, a physician must evaluate the patient to see and assess the patient before issuing a new order.

149. Each written order for physical restraint at all material times was only permitted under Federal law to be limited to 4 hours.

150.     Evidence of brutal chest compressions in the medical record and photographs from her admission show that Ann McGarrity actually died in restraints.

151.     HOSPITAL did not report Ann McGarrity's death to CMS.

152.     At all times material hereto, Defendant HOSPITAL's maintained employees/agents/apparent agents, to include Defendant nurses, ABIGAIL JACKSON, R.N., ASHLEY BOYT, R.N. AND NICOLA CRAIG, R.N (HOSPITAL'S nurses) for the care and treatment of Ann McGarrity.

153.     At all material times, HOSPITAL, through its agents/employees/apparent agents and/or independent contractors to include JACKSON, BOYT AND CRAIG (HOSPITAL'S NURSES) attempted multiple times to insert a Dobhoff feeding tube using CORTRAK, resulting in Ann McGarrity's lungs being punctured multiple times.

154.     At the times material to the insertion of the DHT, Ann McGarrity's hands were restrained.

155.     Ann McGarrity went into atrial fibrillation with rapid ventricular rate reaching up to 172 BPM and decrease in oxygen saturation to 82% while HOSPITAL's employees/agents/apparent agents and/or independent contractors kept her hands restrained.

156.     HOSPITAL's employees/agents/apparent agents and/or independent contractors to include HOSPITAL'S NURSES performed CPR and other brutal resuscitation attempts while Ann McGarrity was restrained to her bed.

157.     HOSPITAL by and through its employees/agents/apparent agents and/or independent contractors to include HOSPITAL's NURSES kept Ann McGarrity in restraints while she was unconscious, unresponsive and obtunded and in agony.

158.     In addition to physical restraints, HOSPITAL, by and through its employees/agents/apparent agents and/or independent contractors kept Ann McGarrity in chemical restraints.

159.     HOSPITAL's nurses kept Ann McGarrity in physical and chemical restraints against her will and without any legal authority to do so.

160.     HOSPITAL's nurses kept Ann McGarrity in restraints without notifying her healthcare proxies reasonably available to speak on her behalf of her deteriorating and grave change in status.

161.     HOSPITAL's actions in keeping Ann McGarrity in restraints while she was unresponsive, obtunded and in agony violates the prevailing standard of care in the medical community and shows a complete lack of care for the patient, Ann McGarrity.

162.     HOSPITAL's actions in keeping Ann McGarrity in restraints while unresponsive and obtunded amounted to false imprisonment, as there was no legal or valid reason to keep Ann McGarrity in restraints when she was unresponsive, obtunded and in agony, and undergoing a medical procedure that requires a patient to be able to adequately communicate with the provider.

163.     HOSPITAL had no authority to keep Ann McGarrity in restraints while she was unresponsive and obtunded.

164.     HOSPITAL's actions at the hands of its employees/agents/apparent agents and/or independent contractors caused pain, suffering, mental pain and suffering and loss of capacity for the enjoyment of life of Decedent, Ann McGarrity.

165.     HOSPITAL's employees/agents/apparent agents and/or independent contractors to include HOSPITAL's NURSES disregarded the Regulations and Requirements for the

Use of Restraints as set forth by the Joint Commission on the Accreditation of Health Care Organizations and the Centers for Medicare and Medicaid Services and otherwise fell below the standard of care in the medical community.

166.     The requirements identified in the previous paragraph are extremely specific and all encompassing. These requirements provide that the least restrictive restraint should be used when restraint is necessary, monitoring the patient while in restraints is necessary, and the provision of care to patients who are restrained, the initial evaluation, continual ongoing assessments and the scope of monitoring for a patient placed in restraints.

167.     The physical status, vital signs, injury to a patient, psychological comfort and maintaining the dignity and safety of the patient is paramount according to the aforementioned rules and regulations stated in this count.

168.     HOSPITAL left an 86-year-old patient tied to her bed by her wrists for more than 7 hours, leaving her no ability to communicate.

169.     It is mandatory that other, less restrictive restraint be attempted before tying this 86-year-old woman to her bed.

170.     Additionally, HOSPITAL failed to timely chart the monitoring of Ann McGarrity while she was chemically and physically restrained to her bed in complete and utter agony.

171.     Hospital, by and through its employees/agents/apparent agents and/or independent contractors to include CRAIG, JACKSON AND BOYT did not give Ann McGarrity any pain medications in a timely manner and no pain medications were even ordered in a timely manner while Ann McGarrity was tied to her bed with multiple punctures in her lungs and a forced breathing apparatus (Bipap) placed over her face..

172.    HOSPITAL tied Ann McGarrity to her bed, forcing air into her punctured and collapsed lungs and essentially continued the torture of Ann McGarrity without even thinking that patient could be in pain from the assault she had just endured and was still enduring at the hands of its employees/agents/apparent agents and/or independent contractors to include CRAIG, JACKSON and BOYT.

173.    Restraints were ordered with no physician coming to the bedside to evaluate Ann McGarrity in contravention to accepted standards of practice in the medical community.

174.    HOSPITAL kept Ann McGarrity in restraints, tied to the bed while she was in A-Fib with a heart rate into the 150's reaching 172 BPM, Rapid V-Tach, and oxygen saturation as low as 68% (critical).

175.    HOSPITAL kept Ann McGarrity restrained to her bed even though she experienced severe distress and injury.

176.    HOSPITAL through its employees/agents/apparent agents and/or independent contractors kept Ann McGarrity in restraints in her bed despite having undergone multiple lung punctures causing excruciating pain.

177.    HOSPITAL knew or should have known that keeping Ann McGarrity chemically and physically restrained to her bed after she just underwent life-threatening injuries to both lungs and multiple lung punctures was inhumane, unjustified, and fell far below the applicable standard of care.

178.    Hospital knew or should have known that Ann McGarrity had expressive aphasia and had great difficulty speaking for herself. Her only means of communication with those unwilling to stop and listen was writing. Yet, HOSPITAL restrained Ann McGarrity's hands and chemically restrained her so she could not write or communicate.

179.     HOSPITAL, by and through its employees/agents/apparent agents and/or independent contractors violated Ann McGarrity's dignity as they left her restrained to the bed in chemical and physical restraints, unable to speak for herself, in complete and utter agony with no pain medication.

180.     HOSPITAL, by and through its employees/agents/apparent agents and/or independent contractors violated Ann McGarrity's dignity and failed to contact Ann McGarrity's  healthcare proxies regarding the change in status.

181.     HOSPITAL, by and through its employees/agents/apparent agents and/or independent contractors failed to maintain Ann McGarrity's safety as her respiratory and cardiac status were compromised, Ann McGarrity lost consciousness and lost the equivalent of nearly one unit of blood. Yet, HOSPITAL left her in bed chemically and physically restrained to her bed like an animal.

182.     Due to HOSPITAL's acts described herein, Ann McGarrity suffered great bodily injury, pain, suffering, shortened life expectancy, medical expenses and loss of capacity for the enjoyment of life.

183.     As a result of the acts of HOSPITAL identified in this Count, by and through its agents, employees, independent contractors and apparent agents, Ann McGarrity was unlawfully detained and deprived of her liberty.

184.     Ann McGarrity was deprived of her liberty and unlawfully detained by hospital against her will and hospital had no legal authority or "color of authority" to unlawfully detain and deprive Ann McGarrity of her liberty.

185. HOSPITAL, by and through its employees, agents, independent contractors and apparent agents, was unreasonable by committing any one of the aforementioned atrocious acts identified in this paragraph.

186. As a result of HOSPITAL's false imprisonment, Ann McGarrity suffered pain, loss of enjoyment of her life, loss of interaction with family, thus resulting in permanent damage to Plaintiff's overall health and bodily condition; put her at significantly higher risk for health problems and reduced her life expectancy. Plaintiff suffered permanent bodily injury resulting in pain and suffering, disability, disfigurement, mental anguish, loss of the capacity for the enjoyment of life, expense of medical treatment, inability to lead a normal life, great additional medical and related medical expenses for care and treatment of the damage done.

**WHEREFORE**, Plaintiff demands judgment for damages, interest, costs and any other relief that this Court deems just and proper. PLAINTIFF further demands a trial by jury on all issues triable as a matter of right.


## COUNT X
## BREACH OF FIDUCIARY DUTY AGAINST DEFENDANT
## FLORIDA HEALTH SCIENCES CENTER, INC.

187. At all times material, Defendant HOSPITAL had a fiduciary obligation to Ann McGarrity, Decedent, HOSPITAL's patient, to provides safe and competent medical services.

188. Decedent, as a patient admitted to Defendant HOSPITAL's facility was entirely dependent upon its staff and employees for her care and well-being. Defendant Hospital housed and fed Decedent and undertook to provide her with all of her daily needs and

care. All of Decedent's personal needs were under the control of HOSPITAL, and
because she was a patient receiving medical care, this included the manner in which
Decedent would die and her medical decision making in HOSPITAL.

189.     As a result of this dependent relationship, relation of trust and confidence existed
between Decedent and Defendant HOSPITAL such that confidence was reposed by
Decedent and trust was accepted by Defendant HOSPITAL.

190.     As a result of such trust and confidence, a fiduciary relationship existed between
Decedent and Defendant HOSPITAL. That fiduciary relationship placed the obligation
on Defendant HOSPITAL to honor, respect and effectuate Decedent's end of life choices
and medical care choices directives, including the choice expressed that Decedent was a
DNR and no feeding tubes of any kind should be used in her care, that resuscitative
efforts should not be inflicted upon Decedent during the final moments of her life.

191.     Defendant HOSPITAL, by and through its employees, agents, independent
contractors and apparent agents, breached its fiduciary duty to Decedent by:

    a.  Failing to act with honesty and good faith toward Ann McGarrity by falsifying
medical records to hide the negligence/malpractice of its
employees/agents/apparent agents and/or independent contractors.

    b.  Failing to act with honesty and good faith toward Ann McGarrity by destroying
medical records revealing negligence/medical malpractice of its
employees/agents/apparent agents/independent contractors.

    c.  Failing to act honestly toward the patient, putting its own interests to avoid a
lawsuit for negligence and/or medical malpractice ahead of its patient, thereby
breaching its fiduciary duty to Ann McGarrity.

    d.  Failing to allow Ann McGarrity and/or her healthcare proxies to make medical

decisions in violation of its fiduciary duty toward Ann McGarrity.

192.     HOSPITAL, as a fiduciary, was required to act in good faith and uphold duties of

loyalty and care for the benefit of Ann McGarrity.

193.     HOSPITAL breached that fiduciary duty by committing the acts listed above in

this count.

194.     Ann McGarrity placed trust in Defendant HOSPITAL to safely and competently

provide medical services to her and Defendant HOSPITAL accepted that trust.

195.     HOSPITAL actively campaigned itself as a "world class medical center."

Additionally, HOSPITAL actively advertised that it was the #1 hospital in Tampa Bay

according to *U.S. News and World Report's Best Hospitals*.

196.     As a result of the breach of fiduciary duty of HOSPITAL, Ann McGarrity

suffered grave physical pain, suffering, disfigurement, shortened life expectancy, mental

pain and suffering, medical expenses and loss of capacity for the enjoyment of life.

197.     As a result of this breach of fiduciary duty, the Estate of Ann McGarrity suffered

financial losses, including costs to investigate, court costs, expert witness costs and

attorney fees. The losses of the estate will continue to accrue.

      **WHEREFORE**, Plaintiff demands judgment for damages, interest, costs and any

other relief that this Court deems just and proper. PLAINTIFF further demands a trial by

jury on all issues triable as a matter of right.

## <u>COUNT XI</u>
## <u>LACK OF CONSENT/INFORMED CONSENT AGAINST BRIAN BOLT, ARNP</u>

198.     This is a survival action pursuant to Florida Statute §46.021, based upon the death

of Ann M. McGarrity, deceased, who died on February 24, 2018.

199.     At or around February 22, 2018, at 1322 (1:22 p.m.), Defendant, BOLT ordered

placement of a feeding tube into Ann McGarrity.

200.     At the time Defendant BOLT placed this order, he was working as an

employee/agent/servant on behalf of Defendant, FGTB providing medical care and

treatment to decedent, Ann McGarrity, in HOSPITAL.

201.     This order was made without the consent of Decedent, Ann McGarrity, or the

consent of Ann McGarrity's family/healthcare surrogates/power of attorney.

202.     At no time did Defendant BOLT discuss the procedure with Ann McGarrity,

decedent, or the multiple other people available to make decisions on her behalf.

203.     Prior to BOLT making the order for the Dobhoff feeding tube, decedent gave a

directive to hospital that no feeding tubes of any kind should be used in her care and

treatment.

204.     BOLT ordered the feeding tube in contravention of MCGARRITY's directives

governing her care.

205.     BOLT made the order for insertion of the feeding tube without advising or

informing the patient/family/healthcare surrogates/power of attorney available for

consultation.

206.     The order for the insertion of the feeding tube into Ann McGarrity violated the

Decedent's directives.

207.     ARNP BOLT had knowledge of Ann McGarrity's directive that no feeding tube of any kind should be used in her care and treatment.

208.     ARNP BOLT had knowledge that Ann McGarrity was a DNR patient.

209.     ARNP BOLT had knowledge of Ann McGarrity's healthcare surrogates/proxy on file at HOSPITAL to make medical decisions on Ann McGarrity's behalf.

210.     Defendant, BOLT, had a duty to disclose in a reasonable manner all significant medical information he possessed or reasonably should have possessed that is material to an intelligent decision by the patient whether to undergo a proposed procedure.

211.     Additionally, in the absence of Ann McGarrity's availability to give consent, Defendant, BOLT, had a duty to disclose in a reasonable manner all significant medical information he possessed or reasonably should have possessed that is material to an intelligent decision to those persons on Ann McGarrity's behalf with the power to give consent whether Ann McGarrity would undergo a proposed procedure.

212.     BOLT did not disclose the risk of undergoing insertion of a Dobhoff feeding tube using CORTRAK to Decedent McGarrity.

213.     BOLT did not disclose the risk of undergoing insertion of a Dobhoff feeding tube using CORTRAK to those persons authorized to give consent on Ann McGarrity's behalf.

214.     If BOLT had provided Plaintiff's decedent and/or those charged with giving consent on her behalf with the proper information, neither Plaintiff's decedent nor a reasonable person in similar circumstances would have undergone the insertion of the Dobhoff Feeding Tube.

215.    The purpose of informed consent is to permit patients to receive the healthcare they desire, and their caregivers feel they need, so long as the substantial risks and hazards are fully disclosed and accepted.

216.    BOLT ordered a procedure, not approved by the patient or anyone on the patient's behalf, which would deprive Ann McGarrity, a patient in respiratory distress and on bipap, of oxygen.

217.    BOLT deprived Ann McGarrity of her personal liberty by ordering the feeding tube without (1) disclosing it to her; (2) obtaining her consent; (3) disclosing all of the risks/benefits of the procedure; (4) informing her family/power of attorney/next of kin/healthcare proxies; (4) disclosing the substantial risks and hazards of the procedure; (5) providing any information whatsoever.

218.    Had BOLT informed McGarrity and/or the multiple healthcare proxies on file with consent to make a decision on her behalf, regarding the proposed risks, benefits, dangers, and other pertinent information about the tube, a reasonable person under similar circumstances would not have consented to the procedure.

219.    Pursuant to *Fla. Stat.* § 766.103, BOLT, as an ARNP, is held to the standard of care to obtain informed consent.

220.    The order for the Dobhoff Feeding Tube was not medically necessary and fell below the standard of care.

221.    Due to BOLT's negligent acts, Ann McGarrity suffered great bodily injury, pain, suffering, medical expenses, shortened life expectancy, disfigurement and loss of capacity for the enjoyment of life..

WHEREFORE, Plaintiff demands judgment for damages, interest, costs and any other relief that this Court deems just and proper. PLAINTIFF further demands a trial by jury on all issues triable as a matter of right.

## COUNT XII
## NEGLIGENCE AGAINST BRIAN BOLT, ARNP

222.        This is a survival action pursuant to *Fla. Stat.* § 46.021.

223.        At all material times, BRIAN BOLT was an advanced registered nurse practitioner subject to the laws of the State of Florida in the rendering of medical care.

224.        At all material times, BOLT was an employee/agent/servant/and/or contractor of FLORIDA GULF TO BAY ANESTHESIOLOGY ASSOCIATES, LLC.

225.        At all material times, BOLT was responsible for the care and treatment of Ann McGarrity while she was a patient at HOSPITAL.

226.        At all material times, BRIAN BOLT was required to practice within the standard of care in the medical community.

227.        On or about February 22, 2018, at 1:22 p.m., BOLT ordered a Dobhoff tube (DHT) as part of his care and treatment of Ann McGarrity.

228.        BOLT did not consult with Ann McGarrity regarding the DHT or Ann McGarrity's family regarding the DHT or the need for it.

229.        Had BOLT attempted to obtain informed consent, Ann McGarrity and the family would have rejected the DHT.

230.        BOLT ordered the DHT in order to administer medications that the Decedent was apparently unable to take PO (by mouth).

231.    As an ARNP, BOLT knew or should have known that these medications were

available by IV route.

232.    It was not medically necessary to order a DHT for the purpose of administering

medications.

233.    The use of DHT on a patient of Ann McGarrity's respiratory status, age, build and

mental status was unreasonable and ordering same fell below the standard of care.

234.    Taking a respiratory compromised patient off of oxygen to perform insertion of

DHT for the purpose of administering drugs available through other routes is not

advisable as it further compromises the patient's respiratory status unnecessarily.

235.    At the time of the events surrounding Ann McGarrity's hospitalization, Ann

McGarrity had taken Cardizem orally prior to being admitted into the hospital and during

her hospital admission.

236.    Moreover, multiple medications were given to Ann McGarrity PO (by mouth)

during her stay at HOSPITAL and while she was under the care of BOLT.

237.    In ordering a DHT for this frail, elderly woman with a thin build and

compromised respiratory and mental status, with no consent for the procedure from

anyone,  BOLT fell below the standard of care in the medical community.

238.    BOLT's decision to insert a dangerous, contraindicated feeding tube shows a

complete lack of critical thinking skills and complete disregard for the patient and

constitutes negligence.

239.    BOLT also failed to recognize that heart medications necessary for the patient's

survival were not given. BOLT failed to intervene in this medical error as the ARNP

assigned to her care.

*McGarrity v. TGH, et. al.*
Third Amended Complaint
Page 60 of 87

240.     The actions above constitute negligence and a breach of the standard of care and

duty owed by this ARNP to Ann McGarrity.

241.     As a result of BOLT's negligence in falling below the standard of care, ANN

MCGARRITY suffered great pain, medical expenses, suffering, disfigurement, shortened

life expectancy and loss of capacity for the enjoyment of life.

**WHEREFORE**, Plaintiff demands judgment  for damages, interest, costs and any other

relief that this Court deems just and proper.  PLAINTIFF further demands a trial by jury on all

issues triable as a matter of right.

## COUNT XIII
## DIRECT NEGLIGENCE AGAINST LACINDA DENIS, P.A.

242.     This is a survival action pursuant to *Fla. Stat.* § 46.021.

243.     At all times material hereto, Defendant, LACINDA DENIS, was a Physician's

Assistant licensed to perform medical services consistent with her licensing in the State

of Florida.

244.     At all times material, DENIS was an employee of Florida Gulf to Bay

Anesthesiology Associates, LLC ("FGTB").

245.     At all times material, DENIS was responsible for the care and treatment of

decedent, ANN MCGARRITY, while she was in HOSPITAL.

246.     DENIS was on duty the night/early morning when Co-Defendants BOYT,

CRAIG and JACKSON attempted to place the Dobhoff feeding tube.

247.     Despite being notified of probable malpositioning of DHT and suspected

pneumothorax, DENIS, the Attending Physician Assistant on duty, did not order that

Bipap be discontinued.

248.     Continued use of Bipap is contraindicated for a patient with suspected

pneumothorax.

249.     Despite being notified that Ann McGarrity was experiencing agonal breathing,

experienced atrial fibrillation and had a suspected pneumothorax, DENIS failed to order

any pain medications for Ann McGarrity.

250.     At or around 2240 on 2/22/18, a chest x-ray was performed that showed a

suspected pneumothorax.

251.     Despite learning on 2/22/18 at or around 2318 that lung punctures were present,

DENIS kept Ann McGarrity on Bipap.

252.     DENIS failed to order appropriate medications for patient's deteriorating

conditions.

253.     Despite severe, deteriorating conditions of patient, DENIS allowed continued

multiple attempts at placement of Dobhoff tube using CORTRAK, leading to multiple

lung punctures in a distressed patient who was unable to undergo the procedure in

contravention to prevailing medical standards.

254.     Despite multiple attempts to place Dobhoff resulting in multiple lung punctures,

DENIS failed to order any appropriate pain medications for the patient.

255.     In general, the continued use of Bipap on a patient with a collapsed lung worsens

their condition and leads to fatal complications.

256.     Despite learning on 2/22/18 at or around 2318 that atelectasis and pleural effusion

was present per the x-ray, DENIS failed to order any pain medications for Ann

McGarrity.

257.     Despite Ann McGarrity's rapid change of status, DENIS failed to take Ann McGarrity out of bilateral wrist restraints.

258.     DENIS also failed to ensure that informed consent was given for the DHT insertion prior to it taking place.

259.     DENIS was aware of an emergent condition and failed to document it and/or report it, resulting in injuries to ANN MCGARRITY.

260.     DENIS additionally failed to give appropriate medications to ANN MCGARRITY.

261.     DENIS failed to intervene in a timely and appropriate manner resulting in harm to ANN MCGARRITY.

262.     Further, DENIS failed to understand or appreciate the change in ANN MCGARRITY's condition.

263.     DENIS negligently, wantonly and recklessly left a dying patient in wrist restraints while the patient was in excruciating pain with two punctured lungs and a forced breathing apparatus that forced air into her punctured lungs that would have caused unbelievable torment.

264.     DENIS' actions described in this paragraph fell below the applicable standard of care.

265.     DENIS failed to notify the family of the pneumothorax and grave change in status and this failure resulted in the lack of ability to obtain a timely chest tube.

266.     DENIS thereafter assisted with a coverup to conceal her negligence in the care and treatment of the patient, thereby breaching her duty to the patient.

267.     Due to DENIS' negligent acts, Ann McGarrity suffered great bodily injury, pain, suffering and loss of capacity for the enjoyment of life.

**WHEREFORE**, Plaintiff demands judgment for damages, interest, costs and any other relief that this Court deems just and proper. PLAINTIFF further demands a trial by jury on all issues triable as a matter of right.

### COUNT XIV

### NEGLIGENCE AGAINST MICHAEL FRANKS, ARNP

268.     This is a survival action pursuant to *Fla. Stat.* § 46.021.

269.     At all material times, Defendant, MICHAEL FRANKS, was an Advanced Registered Nurse Practitioner performing work within the scope of his licensure in the State of Florida.

270.     At all material times, FRANKS was an employee/agent/servant/contractor of Defendant, Florida Gulf to Bay Anesthesiology Associates, LLC.

271.     At all material times, FRANKS was responsible for providing care and treatment to Decedent, Ann McGarrity in compliance with the applicable standard of care in the medical community.

272.     At all material times, FRANKS failed to timely confer with patient's healthcare proxies to advise of the rapid and grave status in change of Decedent, Ann McGarrity.

273.     FRANKS failed to consult with physicians to determine appropriate steps of care for management of this patient with a new pneumothorax and malpositioned DHT.

274.     FRANKS failed to timely consult with the family regarding the use of chest tube or other life saving measure that could have been used to assist with the quality of life of Ann McGarrity.

275.     FRANKS also failed to prescribe appropriate medications in a timely manner despite knowing that pneumothorax was present.

276.     FRANKS failed to take ANN MCGARRITY off of Bipap when known pneumothorax (multiple) present.

277.     It is common knowledge for a person with FRANKS' skill and training that pneumothorax presents extreme pain and discomfort.

278.     At all material times, FRANKS was negligent in the performance of medical care services on Ann McGarrity and fell below the standard of care for a person with FRANKS education and training.

279.     FRANKS further attempted to conceal his negligence by misinforming the healthcare proxies of the patient in violation of his duty to the patient.

280.     As a result of FRANKS' negligence, ANN MCGARRITY suffered great bodily injury, medical expenses, pain and suffering and loss of capacity for the enjoyment of life.

**WHEREFORE** Plaintiff seeks judgment against FRANKS for damages within the jurisdictional limits of this Court for great bodily injury, pain and suffering, shortened life expectancy, disfigurement and loss of capacity for the enjoyment of life experienced by decedent, ANN MCGARRITY and a trial by jury.

## COUNT XV
## VICARIOUS LIABILITY AGAINST FLORIDA GULF TO BAY ANESTHESIOLOGY ASSOCIATES, LLC

281.     This is a survival action pursuant to Florida Statute §46.021, based upon the death of Ann M. McGarrity, deceased, who died on February 24, 2018.

282. At the time Ann McGarrity was in HOSPITAL from February 20, 2018 through February 24, 2018, FGTB employed doctors, nurse practitioners and advanced registered nurse practitioners in the care and treatment of Ann McGarrity, to include BOYT, DENIS, SCHWEIGER and FRANKS.

283. As employees/agents/apparent agents and/or independent contractors of FGTB, BOYT, DENIS, SCHWEIGER and FRANKS, FGTB is vicariously liable for their negligent acts.

284. At the time of ANN MCGARRITY's admission to HOSPITAL, FGTB by and through its employees/agents/apparent agents and/or independent contractors to include BOYT, DENIS, SCHWEIGER and FRANKS were negligent in the following ways:

    a. Failing to obtain consent/informed consent for medical procedures.

    b. Failing to appropriately manage medications and give medications via correct routes.

    c. Failing to use critical thinking skills.

    d. Failing to intervene.

    e. Failing to report sentinel events.

    f. Engaging in widespread cover up to conceal the negligent acts of its employees.

    g. Putting respiratory compromised patient on Bipap.

    h. Chemically and physically restraining dying patient.

    i. Failing to administer life-saving medications.

    j. Failing to assess pain/mental status of patient.

    k. Failure to administer pain medications.

l.   Ordering a dangerous and contraindicated feeding tube in a frail woman of thin build where it was medically unnecessary where the risk of harm outweighed any benefit to the patient, resulting in grave and serious injuries to patient.

m.   Lack of critical thinking skills and complete disregard for the patient.

n.   Failure to visit beside of patient before authorizing restraints.

o.   Failed to discontinue order of restraints after patient, having been brutally punctured in both lungs, on a forced breathing apparatus in agonal breathing lay dying confined to her bed in chemical and physical restraints.

p.   Failing to discontinue BIPAP despite multiple suspected and/or confirmed lung punctures.

q.   Failed to order pain medications for patient in agonal breathing and in atrial fibrillation.

r.   Failing to order/read/intervene for x-ray placement confirmation of Dobhoff tube.

s.   Failing to use CORTRAK information to ensure proper placement of Dobhoff tube.

t.   Failing to intervene when patient was suffering from fluid overload due to multiple HOSPITAL nurses administering double the amount of IV liquids required for this patient.

u.   Failed to chart and document the patients file thereby resulting in lack of continuity of care in this critically injured patient.

v.   Failing to document and timely intervene in clearly emergent situations involving this patient.

w.   Failing to be educated in HIPAA.

x.  Failed to timely notify patient's healthcare proxies of grave change in status making impossible the use of a potentially life-saving chest tube.

y.  Falsely creating documents and deleting records to hide their negligent acts resulting in grave harm to the patient.

z.  Failed to intervene to determine appropriate steps of care for management of this patient with a new pneumothorax and malpositioned DHT.

aa. Failed to intervene when nurses failed to administer life-saving medications to this patient.

bb. Failed to timely consult with patient's healthcare proxies regarding use of chest tube, a possibly life-saving measure.

cc. Misrepresenting the status of Ann McGarrity's health to each other, HOSPITAL nurses, Plaintiff's healthcare proxies resulting in inconsistent continuity of care of patient.

dd. Failed to timely visit bedside to assess patient.

ee. Failing to verify patient's medications

ff. Failing to appreciate the cause of patient's change in mental status.

gg. Chemically and physically restraining patient.

hh. Failing to change care plan despite grave change in status.

285.    Due to the vicariously negligent acts of FGTB's employees/agents/apparent agents, Ann McGarrity suffered great bodily injury, pain, suffering, medical expenses disfigurement, shortened life expectancy, mental anguish and loss of capacity for the enjoyment of life.

WHEREFORE, Plaintiff demands judgment for damages, interest, costs and any other relief that this Court deems just and proper. PLAINTIFF further demands a trial by jury on all issues triable as a matter of right.

## COUNT XVIII
## LACK OF CONSENT/INFORMED CONSENT AGAINST DEFENDANT
## YASMINE KHALDOUN MAHMOUD, MD

286.    This is a survival action pursuant to Florida Statute §46.021, based upon the death of Ann M. McGarrity, deceased, who died on February 24, 2018.

287.    At all times material to this Complaint, YAMINE KHALDOUN MAHMOUD, MD undertook care and treatment for Ann McGarrity at HOSPITAL.

288.    At all times material, MAHMOUD worked for Defendant, PREMIER HOSPITALISTS, at the time she undertook the care and treatment of Ann McGarrity at HOSPITAL.

289.    MAHMOUD failed to obtain any consent at all for the feeding tube insertion guide she ordered for MCGARRITY at hospital.

290.    Defendant MAHMOUD ordered the feeding tube insertion guide without informing and consulting the patient or the patient's family/healthcare proxies and/or power of attorney that were available to speak on her behalf.

291.    MAHMOUD ordered this without even visiting the bedside of Ann McGarrity to assess her ability to undergo the procedure.

292.    Moreover, said order for the feeding tube insertion guide violated Decedent McGarrity's directives to HOSPITAL.

293.     Defendant MAHMOUD ordered the feeding tube insertion guide without informing and obtaining consent for the placement of the feeding tube.

294.     Defendant MAHMOUD ordered the feeding tube insertion guide without consulting the patient or the patient's healthcare proxies.

295.     Defendant, MAHMOUD, had a duty to disclose in a reasonable manner all significant medical information she possessed or reasonably should have possessed that is material to an intelligent decision by the patient whether to undergo a proposed procedure.

296.     The risk of undergoing insertion of a Dobhoff feeding tube using CORTRAK was not disclosed to Decedent McGarrity, or any of her healthcare proxies who were available to speak on her behalf.

297.     If MAHMOUD had provided Plaintiff's decedent and/or her healthcare proxies with the proper information, neither Plaintiff's decedent nor a reasonable person in similar circumstances would have undergone the insertion of the Dobhoff Feeding Tube with CORTRAK insertion guide.

298.     Due to MAHMOUD's negligent acts, Ann McGarrity suffered great bodily injury, pain, suffering, medical expenses, mental anguish, shortened life expectancy, disfigurement and loss of capacity for the enjoyment of life.

          **WHEREFORE**, Plaintiff demands judgment for damages, interest, costs and any other relief that this Court deems just and proper.  PLAINTIFF further demands a trial by jury on all issues triable as a matter of right.

## COUNT XVII
## NEGLIGENCE AGAINST YASMIN MAHMOUD, M.D.

299.     This is a survival action pursuant to Fla. Stat. § 46.021 based upon the death of

Ann McGarrity, deceased, who died on February 24, 2018.

300.     At all times material, Defendant, YASMIN MAHMOUD, M.D. was a physician

providing medical services within the scope of her practice as a medical doctor and

licensure with the State of Florida.

301.     At all times material, MAHMOUD performed medical services on Ann

McGarrity while she was a patient at HOSPITAL.

302.     At the time MAHMOUD performed services on Plaintiff, MAHMOUD was an

employee of PREMIER HOSPITALISTS, P.L.

303.     Yasmin Mahmoud, M.D. has failed to cooperate with the pre-suit process, and she

has completely failed to provide any response whatsoever to the requests for information

provided to her. She has failed to contact the undersigned to request an extension and has

otherwise failed to file an affidavit and denial of the claim.

304.     During the times MAHMOUD undertook the care and treatment of

MCGARRITY, she engaged in the following acts of negligence:

    a.  Failing to verify medications.

    b.  Failing to consult with patient at bedside despite grave changes in status.

    c.  Failure to recognize grave change in status of patient and modify treatment.

    d.  Failed to unshackle the patient from her bedside as she lay dying in agonal

       breathing.

e. Failed to take Ann McGarrity off of Bipap machine which was contraindicated for Ann McGarrity due to her multiple lung punctures.

f. Failed to report multiple sentinel events.

g. Failed to timely chart such that it robbed Ann McGarrity of proper continuity of care.

h. Failed to document Ann McGarrity's directives to hospital during her admission assessment.

i. Failed to recognize that Dobhoff tube and CORTRAK were contraindicated in this frail, elderly woman.

j. Failed to honor McGarrity's DNR status resulting in multiple brutal chest compressions resulting in internal bleeding and other injuries.

k. Failed to use critical thinking skills in her care and treatment of the patient.

l. Failure to keep accurate medical and/or clinical records to include verifying home medications.

m. Failed to verify weight of patient.

305.    MAHMOUD's negligent acts described herein and in any preceding paragraphs in this count fell below the standard of care in the medical community.

306.    As a result of MAHMOUD's negligence and sub-standard medical care, Ann McGarrity suffered pain and suffering, medical expenses, disfigurement, aggravation of a pre-existing condition, mental anguish, shortened life expectancy and suffering and loss of capacity for the enjoyment of life.

WHEREFORE, Plaintiff demands judgment for damages, interest, costs and any other relief that this Court deems just and proper. PLAINTIFF further demands a trial by jury on all issues triable as a matter of right.

## COUNT XIX
## NEGLIGENCE ACTION AGAINST DOUGLAS SCHWARTZ, D.O.

307.     This is a survival action pursuant to Fla. Stat.§ 46.021 based upon the death of Ann McGarrity who died on February 24, 2018.

308.     At all times material, DOUGLAS SCHARTZ, D.O. as a doctor of osteopathy practicing medicine pursuant to his licensure with the State of Florida.

309.     At all times material, DOUGLAS SCHWARTZ, D.O. was an employee/agent/servant/contractor of Defendant, PREMIER HOSPITALISTS, PL.

310.     At all material times, DOUGLAS SCHWARTZ, D.O. performed medical services on Ann McGarrity while she was a patient in HOSPITAL.

311.     At all material times, SCHWARTZ had a duty to practice medicine in accordance with the applicable standard of care in the medical community.

312.     During the time SCHWARTZ provided medical care and treatment to Ann McGarrity at HOSPITAL, he committed the following negligent acts that fell below the standard of care:

   a.   Failing to accurately and completely chart the file, thereby robbing Ann McGarrity of proper continuity of care.

   b.   Failing to report sentinel events.

   c.   Failing to supervise subordinates.

   d.   Ordering wrist restraints on a patient and failing to visit the bedside to assess patient.

    e.   Failing to discontinue wrist restraints despite patient having multiple lung punctures, agonal breathing and rapid atrial fibrillation.

    f.   Failing to order pain medications.

    g.   Failing to assess pain.

    h.   Failing to assess mental status.

    i.   Failing to appreciate mental status and intervene.

    j.   Failing to intervene in a timely manner during Ann McGarrity's medical care over which he presided.

    k.   Failing to discontinue bipap in patient with multiple lung punctures.

    l.   Failing to use critical thinking skills.

    m.   Failing to discontinue restraints as the patient lay restrained to her bed in complete and utter agony.

    n.   Failing to discontinue restraints when patient was brain dead and obtunded.

    o.   Failing to discontinue wrist restraints for Dobhoff procedure.

    p.   Failing to order pain medications.

    q.   Failing to assess patient's communication skills.

313.    These actions of Schwartz caused severe pain, great bodily injury, suffering, medical expenses, disfigurement, mental anguish and loss of capacity for the enjoyment of life and shortened life expectancy.

**WHEREFORE**, Plaintiff demands judgment for damages, interest, costs and any other relief that this Court deems just and proper. PLAINTIFF further demands a trial by jury on all issues triable as a matter of right.

**COUNT XX**
**VICARIOUS LIABILITY AGAINST PREMIER HOSPITALISTS, PL**

314.     This is a survival action pursuant to Florida Statute §46.021, based upon the death of Ann M. McGarrity, deceased, who died on February 24, 2018.

315.     At all times material to the complaint, PREMIER HOSPITALISTS, PL ("PREMIER") employed doctors to perform medical services at Defendant HOSPITAL.

316.     As employer of said doctors performing work at HOSPITAL, PREMIER is vicariously negligent for the acts of its employees/agents/apparent agents and/or independent contractors under the doctrine of *respondeat superior.*

317.     PREMIER's employees/agents/apparent agents and/or independent contractors to include SCHWARTZ and KALDHOUN were negligent in the care and treatment of ANN MCGARRITY in the following negligent ways:

    a.   Failing to verify medications.

    b.   Failing to consult with patient at bedside despite grave changes in status.

    c.   Failure to recognize grave change in status of patient and modify treatment.

    d.   Failed to unshackle the patient from her bedside as she lay dying in agonal breathing.

    e.   Failed to take Ann McGarrity off of Bipap machine which was contraindicated for Ann McGarrity due to her multiple lung punctures.

    f.   Failed to report multiple sentinel events.

g.  Failed to timely chart such that it robbed Ann McGarrity of proper continuity of care.

h.  Failed to document Ann McGarrity's directives to hospital during her admission assessment.

i.  Failed to recognize that Dobhoff tube and CORTRAK were contraindicated in this frail, elderly woman.

j.  Failed to honor McGarrity's DNR status resulting in multiple brutal chest compressions resulting in internal bleeding and other injuries.

k.  Failed to use critical thinking skills in her care and treatment of the patient.

l.  Failure to keep accurate medical and/or clinical records to include verifying home medications.

m.  Failed to verify weight of patient.

n.  Failing to accurately and completely chart the file, thereby robbing Ann McGarrity of proper continuity of care.

o.  Failing to report sentinel events.

p.  Failing to supervise subordinates.

q.  Ordering wrist restraints on a patient and failing to visit the bedside to assess patient.

r.  Failing to discontinue wrist restraints despite patient having multiple lung punctures, in agonal breathing and rapid atrial fibrillation.

s.  Failing to order pain medications.

t.  Failing to assess pain.

u.  Failing to assess mental status.

    v.   Failing to appreciate mental status and intervene.

    w.  Failing to intervene in a timely manner during Ann McGarrity's medical care over which he presided.

    x.   Failing to discontinue bipap in patient with multiple lung punctures.

    y.   Failing to use critical thinking skills.

    z.   Failing to discontinue restraints as the patient lay restrained to her bed in complete and utter agony.

    aa. Failing to discontinue restraints when patient was brain dead and obtunded.

    bb. Failing to discontinue wrist restraints for Dobhoff procedure.

    cc. Failing to order pain medications.

    dd. Failing to assess patient's communication skills.

    ee. False imprisonment

318.    All of the above referenced acts of negligence in this Count fell below the applicable standard of care in the community.

319.    PREMIER HOSPITALISTS is vicariously liable for the negligent acts of its employee/servant/agents to include SCHWARTZ AND YASMINE MAHMOUD KALDOUN.

320.    Due to PREMIER HOSPITALISTS' vicariously negligent acts, Ann McGarrity suffered great bodily injury, pain, suffering, mental anguish, medical expenses, shortened life expectancy, disfigurement and loss of capacity for the enjoyment of life.

    **WHEREFORE**, Plaintiff demands judgment for damages, interest, costs and any other relief that this Court deems just and proper. PLAINTIFF further demands a trial by jury on all issues triable as a matter of right.

*McGarrity v. TGH, et. al.*
Third Amended Complaint
Page 77 of 87

## XXI
## FALSE IMPRISONMENT AGAINST DOUGLAS SCHWARTZ, D.O.

321.     This is a survival action pursuant to Florida Statute §46.021, based upon the death

of Ann M. McGarrity, deceased, who died on February 24, 2018.

322.     During the time Ann McGarrity was a patient in HOSPITAL, SCHWARTZ was a

physician working for PREMIER at hospital assigned to care for decedent, Ann

McGarrity, thereby creating a doctor patient relationship with a duty to provide proper

medical care and treatment to Ann McGarrity within the standard of care in the medical

community.

323.     During the time Ann McGarrity was in HOSPITAL, SCHWARTZ falsely

imprisoned her by placing her in wrist restraints.

324.     SCHWARTZ ordered wrist restraints without assessing the patient or visiting the

bedside of Ann McGarrity in contravention to prevailing medical standards in the

community.

325.     SCHWARTZ kept Ann McGarrity in wrist restraints despite obvious signs of

change in mental status due to being overmedicated.

326.     The use of restraint constitutes a change in a patient's plan of care.

327.     SCHWARTZ did not notify any of Ann McGarrity's healthcare proxies of this

change in the plan of care.

328.     SCHWARTZ did not notify Plaintiff's healthcare proxies reasonably available to

speak on her behalf of this plan of care.

329.     SCHWARTZ did not inform the patient of the change in the plan of care.

*McGarrity v. TGH, et. al.*
Third Amended Complaint
Page 78 of 87

330.     The original order for use of restraints may only be renewed for up to a total of 24 hours. After the original order expires, a physician must evaluate the patient to see and assess the patient before issuing a new order.

331.     Each written order for physical restraint at all material times was only permitted under Federal law to be limited to 4 hours.

332.     Evidence of brutal chest compressions in the medical record and photographs from her admission show that Ann McGarrity actually died in restraints.

333.     SCHWARTZ did not report Ann McGarrity's death while restrained to CMS.

334.     At all times material hereto, ANN MCGARRITY underwent multiple forced attempted insertions of a Dobhoff feeding tube using CORTRAK, resulting in Ann McGarrity's lungs being punctured multiple times.

335.     At the times material to the insertion of the DHT, Ann McGarrity's was unlawfully restrained.

336.     Ann McGarrity went into atrial fibrillation with rapid ventricular rate reaching up to 172 BPM and decrease in oxygen saturation to 82% while SCHWARTZ kept her hands tied to her bed, restrained.

337.     SCHWARTZ left patient in restraints even as she underwent brutal resuscitation attempts after coding during the Dobhoff procedures.

338.     SCHWARTZ  kept Ann McGarrity in restraints while she was unconscious, unresponsive and obtunded and in complete and utter agony.

339.     SCHWARTZ kept Ann McGarrity in physical restraints against her will and without any legal authority to do so.

340.     SCHWARTZ kept Ann McGarrity in restraints without notifying her healthcare proxies reasonably available to speak on her behalf of her deteriorating and grave change in status.

341.     SCHWARTZ's actions in keeping Ann McGarrity in restraints while she was unresponsive, obtunded and in agony violates the prevailing standard of care in the medical community and shows a complete lack of care or regard for the patient, Ann McGarrity.

342.     SCHWARTZ's actions in keeping Ann McGarrity in restraints while unresponsive, obtunded, in complete and utter agony secondary to having her lungs stabbed multiple times, causing multiple holes in her lungs, with Bipap over her nose and mouth forcing air into her lungs that had multiple holes in them all the while her lungs being blown out like a tire, while patient had severe internal bleeding amounted to false imprisonment, as there was no legal or valid reason to keep Ann McGarrity in restraints when she was in such a terrible state.

343.     SCHWARTZ kept Ann McGarrity in restraints even while brutal resuscitative efforts were forced upon her, causing severe internal bleeding.

344.     SCHWARTZ had no authority to keep Ann McGarrity in restraints while she was unresponsive and obtunded.

345.     SCHWARTZ's actions  caused pain, suffering, mental pain and suffering and loss of capacity for the enjoyment of life**WH**, shortened life expectancy, agony, disfigurement and aggravation of a pre-existing condition to Ann McGarrity.

346.     SCHWARTZ disregarded the Regulations and Requirements for the Use of Restraints as set forth by the Joint Commission on the Accreditation of Health Care

Organizations and the Centers for Medicare and Medicaid Services and otherwise fell below the standard of care in the medical community.

347.      SCHWARTZ left an 86-year-old patient tied to her bed by her wrists for more than 7 hours, leaving her no ability to communicate.

348.      SCHWARTZ left an 86-year-old patient who had just suffered multiple punctures in her lungs, massive internal bleeding and coding in wrist restraints for more than 7 hours.

349.      SCHWARTZ left an 86-year-old patient who had just suffered multiple punctures in her lungs, massive internal bleeding and coding in wrist restraints for more than 7 hours and with no pain medications.

350.      SCHWARTZ tied Ann McGarrity to her bed, forcing air into her punctured and collapsed lungs and essentially continued the torture of Ann McGarrity without even thinking that patient could be in pain from the assault she had just endured and was still enduring.

351.      SCHWARTZ kept Ann McGarrity in restraints, tied to the bed while she was in A-Fib with a heart rate into the 150's reaching 172 BPM, Rapid V-Tach, and oxygen saturation as low as 68% (critical).

352.      SCHWARTZ kept Ann McGarrity restrained to her bed even though she experienced severe distress and injury.

353.      SCHWARTZ requirement/order that Ann McGarrity be kept in physical restraints was inhumane and unjustified.

354.      SCHWARTZ knew or should have known that Ann McGarrity had expressive aphasia and/or "severe dementia" and had great difficulty speaking for herself. Her only

means of communication with those unwilling to stop and listen was writing. Yet, SCHWARTZ restrained Ann McGarrity's hands and chemically restrained her so she could not write or communicate.

355.     SCHWARTZ violated Ann McGarrity's dignity.

356.     SCHWARTZ failed to maintain Ann McGarrity's safety as her respiratory and cardiac status were compromised, Ann McGarrity lost consciousness and lost the equivalent of nearly one unit of blood. Yet, SCHWARTZ left her in bed chemically and physically restrained to her bed like an animal.

357.     As a result of the acts of SCHWARTZ identified in this Count, by Ann McGarrity was unlawfully detained and deprived of her liberty.

358.     Ann McGarrity was deprived of her liberty and unlawfully detained by SCHWARTZ against her will and SCHWARTZ had no legal authority or "color of authority" to unlawfully detain and deprive Ann McGarrity of her liberty.

359.     SCHWARTZ was unreasonable by committing any one of the aforementioned atrocious acts identified in this paragraph.

360.     Due to SCHWARTZ's acts described herein, Ann McGarrity suffered great bodily injury, pain, suffering, shortened life expectancy, disfigurement, aggravation of a pre-existing condition, medical expenses and loss of capacity for the enjoyment of life.

**WHEREFORE**, Plaintiff demands judgment for damages, interest, costs and any other relief that this Court deems just and proper. PLAINTIFF further demands a trial by jury on all issues triable as a matter of right.

## COUNT XXII
## BREACH OF FIDUCIARY DUTY AGAINST ABIGAIL JACKSON, R.N.

361.    This is a survival action pursuant to *Fla. Stat.* §46.021, based upon the death of

Ann M. McGarrity, deceased, who died on February 24, 2018.

362.    ABIGAIL JACKSON, R.N. was an employee of Defendant HOSPITAL during all

times material to the Complaint.

363.    As an employee of Defendant HOSPITAL, JACKSON undertook to care and treat

Ann McGarrity during the time she was in HOSPITAL.

364.    Decedent, as a patient admitted to Defendant HOSPITAL's facility was entirely

dependent upon its staff, to include NURSE JACKSON, for her care and well-being.

Defendant Hospital housed and fed Decedent and undertook to provide her with all of her

daily needs and care. All of Decedent's personal needs were under the control of

HOSPITAL through its employee, JACKSON.

365.    Ann McGarrity, decedent, relied on JACKSON to care and treat her and was

wholly dependent on JACKSON.

366.     As a result of this dependent relationship, relation of trust and confidence existed

between Decedent and Defendant JACKSON such that confidence was reposed by

Decedent and trust was accepted by Defendant JACKSON.

367.    As a result of such trust and confidence, a fiduciary relationship existed between

Decedent and Defendant JACKSON. That fiduciary relationship placed the obligation on

Defendant JACKSON to act honestly and in good faith toward Decedent, Ann

McGarrity.

368.    Moreover, Defendant JACKSON had an overriding duty to Ann McGarrity to

refrain from seeking selfish benefits during their fiduciary relationship.

369.     Defendant, JACKSON, breached her fiduciary duty to Ann McGarrity as follows:

    a.   Falsifying medical records to advance her own interests in violation of her fiduciary duty owed toward Ann McGarrity.

    b.   Destroying medical records to advance her own interests in violation of her fiduciary duty owed toward Ann McGarrity.

    c.   Purposely covering up her negligence to hide his negligent acts/malpractice in violation of his fiduciary duty to Decedent, Ann McGarrity.

    d.   JACKSON enlisted others to assist her in covering up her negligent acts in violation of her fiduciary duty to Ann McGarrity.

370.     JACKSON's breach of her fiduciary duties outlined above constituted abuse of her position of power and confidence with patient, Ann McGarrity.

371.     As a result of the breach of JACKSON's fiduciary duty to ANN MCGARRITY, ANN MCGARRITY suffered great bodily injury, pain, suffering, disfigurement, shortened life expectancy, agony, loss of capacity for the enjoyment of life, mental anguish  and permanent injuries.

372.     Moreover, the Estate of Ann McGarrity has suffered damages flowing from the breach to include costs of investigating and discovering the attempted cover up, including expert witnesses, attorney fees and other expenses. The Estate will continue to incur such damages into the future.

**WHEREFORE** Plaintiff demands judgment for all damages according to proof and a trial by jury on all issues so triable.

## COUNT XXIII
### BREACH OF FIDUCIARY DUTY AGAINST DOUGLAS SCHWARTZ, D.O.

373.     This is a survival action pursuant to *Fla. Stat.* §46.021, based upon the death of

Ann M. McGarrity, deceased, who died on February 24, 2018.

374.     DOUGLAS SCHWARTZ, D.O.. was an employee of Defendant PREMIER during

all times material to the Complaint.

375.     During the time Ann McGarrity was in HOSPITAL, SCHWARTZ undertook her

medical care and treatment.

376.     Ann McGarrity was, at all material times, totally reliant on SCHWARTZ to provide

her with medical care and treatment in accordance with prevailing medical standards in the

community.

377.     Decedent, as a patient admitted to Defendant HOSPITAL's facility was entirely

dependent upon SCHWARTZ for her care and well-being.

378.     SCHWARTZ, as a medical doctor undertaking the care and treatment of Ann

McGarrity was in a superior position of power such that Ann McGarrity was totally

dependent and reliant upon SCHWARTZ for her medical needs.

379.     Ann McGarrity, decedent, relied on SCHWARTZ to care and treat her and was

wholly dependent on SCHWARTZ.

380.      As a result of this dependent relationship, relation of trust and confidence existed

between Decedent and Defendant SCHWARTZ such that confidence was reposed by

Decedent and trust was accepted by Defendant SCHWARTZ.

381.     As a result of such trust and confidence, a fiduciary relationship existed between

Decedent and Defendant SCHWARTZ. That fiduciary relationship placed the obligation

on Defendant SCHWARTZ to act honestly and in good faith toward Decedent, Ann McGarrity.

382.     Moreover, Defendant SCHWARTZ had an overriding duty to Ann McGarrity to refrain from seeking selfish benefits during their fiduciary relationship.

383.     Defendant, SCHWARTZ, breached his fiduciary duty to Ann McGarrity as follows:

    a.  Falsifying medical records to advance his own interests in violation of her fiduciary duty owed toward Ann McGarrity.

    b.  Destroying medical records to advance his own interests in violation of her fiduciary duty owed toward Ann McGarrity.

    c.  Purposely covering up his negligence to hide his negligent acts/malpractice in violation of his fiduciary duty to Decedent, Ann McGarrity.

    d.  SCHWARTZ enlisted others to assist him in covering up his negligent acts in violation of his fiduciary duty to Ann McGarrity.

384.     SCHWARTZ's breach of his fiduciary duties outlined above constituted abuse of his position of power and confidence with patient, Ann McGarrity.

385.     As a result of the breach of SCHWARTZ'S fiduciary duty to ANN MCGARRITY, ANN MCGARRITY suffered great bodily injury, pain, suffering, disfigurement, shortened life expectancy, agony, loss of capacity for the enjoyment of life, mental anguish  and permanent injuries.

386.     Moreover, the Estate of Ann McGarrity has suffered damages flowing from the breach to include costs of investigating and discovering the attempted cover up, including

expert witnesses, attorney fees and other expenses. The Estate will continue to incur such damages into the future.

**WHEREFORE** Plaintiff demands judgment for all damages according to proof and a trial by jury on all issues so triable together with costs and such further relief as the Court deems appropriate.

## GOOD FAITH CERTIFICATION

Pursuant to *Fla. Stat.* § 766.104(1), counsel hereby certifies that a reasonable investigation gave rise to a good faith belief that grounds exist for an action against each named Defendant.

## DEMAND FOR JURY TRIAL

**WHEREFORE** Plaintiff demands a trial by jury on all issues so triable and seeks costs of suit and all other relief available to Plaintiff as the Court deems appropriate against all Defendants.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been served upon all counsel of record on July 10, 2023.

> Crystal Sebago, P.A.
> P.O. Box 271650
> Tampa, FL 33688
> Telephone: (813) 391-0716
> Facsimile: (813) 315-7358
> Primary Email: CrystalSebagoPA@gmail.com
> Secondary Email: McGarrityLaw@aol.com
>
>
> */s/Crystal Sebago*
> FBN: 45109